MULTIMEDIA PUBLISHING OF NORTH CAROLINA, INC., D/B/A ASHEVILLE CITIZEN TIMES PUBLISHING COMPANY, A NORTH CAROLINA CORPORATION, PLAINTIFF V. HENDERSON COUNTY AND HENDERSON COUNTY BOARD OF COMMISSION-ERS, DEFENDANTS

No. COA99-520

(Filed 15 February 2000)

## 1. Open Meetings— government body—attorney-client exception—closed session minutes—in camera review by trial court required

Plaintiff's claim seeking injunctive relief to prevent recurring violations of the Open Meetings Law and also seeking a writ of mandamus ordering defendants to turn over minutes from a closed session of the Henderson County Board of Commissioners invoked pursuant the attorney-client exception under N.C.G.S. § 143-318.11(a)(3) is remanded to the trial court for an in camera review of the minutes of the closed session to ensure that neither general policy matters nor the propriety of the moratorium itself were ever discussed because although the attorney-client exception does not require a claim to be pending or threatened before it may be invoked by a government body as grounds to go into closed session, government bodies: (1) may only invoke the exception to the extent the circumstances require it,

and (2) have the burden of establishing that the circumstances did in fact necessitate the closed session.

## 2. Public Records— government body—closed session— minutes

Although plaintiff claims it is entitled to public disclosure of the minutes of a closed session of the Henderson County Board of Commissioners pursuant to the Public Records Law under N.C.G.S § 132-9(a) even if the closed session was warranted under the attorney-client exception in N.C.G.S § 143-318.1(a)(3), this deterimination must be made by the trial court after an in camera review of the minutes of the closed session.

Appeal by plaintiff from orders entered 22 February 1999 and 8 March 1999 by Judge Claude S. Sitton in Henderson County Superior Court. Heard in the Court of Appeals 4 January 2000.

*Kelly & Rowe, P.A., by James Gary Rowe, for plaintiff-appellant.*

*Womble Carlyle Sandridge & Rice, by Tyrus V. Dahl, Jr., for defendant-appellees.*

*Everett Gaskins Hancock & Stevens, by Hugh Stevens and C. Amanda Martin, on behalf of the North Carolina Press Foundation, North Carolina Press Association, Burlington Times-News, Charlotte Observer, Durham Herald-Sun, Gaston Gazette, Greenville Daily Reflector, Hendersonville Times-News, Raleigh News & Observer, Paxton Media Group of North Carolina, Rocky Mount Telegram, Shelby Star, and Wilmington Morning Star/Star-News, amici curiae.*

*James B. Blackburn, III, on behalf of the North Carolina Association of County Commissioners, amicus curiae.*

LEWIS, Judge.

Walt Whitman once penned, "I think heroic deeds were all conceiv'd in the open air." Walt Whitman, *Song of the Open Road*, in *Leaves of Grass*, stanza 4, line 11 (Random House 1993) (1855). The North Carolina General Assembly has apparently agreed. As government service is no doubt an "heroic deed," our legislature has implemented the Open Meetings Law, which mandates that all "official meeting[s] of a public body" be conducted in the open. N.C. Gen. Stat. § 143-318.10(a) (1999). This appeal presents a question of first

MULTIMEDIA PUBL'G OF N.C., INC. v. HENDERSON COUNTY

[136 N.C. App. 567 (2000)]

impression regarding the construction and application of the attorney-client exception to this openness requirement. *See* N.C. Gen. Stat. § 143-318.11(a)(3). It is the first such appeal since the statute was amended in 1994.

During the Fall of 1998, the Henderson County Board of Commissioners ("the Board") began discussing ways to regulate and limit noise that would result from racetracks and speedways being constructed within the county. Consequently, the Board began working on a proposed ordinance. On 12 November 1998, a special board meeting ("the meeting") was called to discuss a moratorium banning any construction or operation of racetracks and speedways until this noise ordinance could be finalized. Because the Board contemplated the adoption of the moratorium at this meeting, the meeting was "official" and thus open to the public, as required by statute. *See* N.C. Gen. Stat. § 143-318.10(a), (c).

According to the minutes from the public part of the meeting, copies of the proposed moratorium were distributed, followed by brief discussion by the Board. The county attorney then arrived, at which point the Board went into closed session pursuant to section 143-318.11(a)(3) ("the attorney-client exception"), purportedly to obtain legal advice. Both the county attorney and staff attorney then met with the Board in closed session. Following this closed session, the Board then reconvened the public meeting and read two amendments to the moratorium, which apparently had been drafted while in closed session. The moratorium as amended then passed by a unanimous vote.

Plaintiff filed a complaint on 8 December 1998, alleging that the Board had unlawfully gone into closed session. Specifically, plaintiff alleged that the Board's use of the attorney-client exception to justify going into closed session was improper under the circumstances here. Plaintiff sought injunctive relief to prevent recurring violations of the Open Meetings Law and also sought a writ of mandamus ordering defendants to turn over the minutes from the closed session pursuant to the Public Records Law. *See* N.C. Gen. Stat. § 132-9(a). From the trial court's orders denying this relief, plaintiff appeals.

**[1]** On appeal we first consider the effect of the legislature's 1994 amendments to the Open Meetings Law, especially with respect to the attorney-client exception outlined in section 143-318.11(a)(3). Plaintiff argues that the exception may only be invoked if there is a claim either pending or threatened against the government body.

Because there was no such claim here, plaintiff contends that the closed session was improper. Defendants, on the other hand, maintain that section 143-318.11(a)(3) actually contains two separate exceptions: one for discussions of specific claims (which would of course require a claim to be actually pending or threatened) and one for general attorney-client privileged matters (which would contain no such requirement). *See also* David M. Lawrence, *1994 Changes to the Open Meetings Law*, Local Gov't Law Bulletin, Sept. 1994, at 1, 5 (espousing a similar interpretation). The trial court accepted defendants' interpretation. After careful examination of the statutory amendments, we feel neither party's interpretation is entirely correct.

N.C. Gen. Stat. § 143-318.11 articulates the exceptions that allow government bodies to hold closed sessions. The only relevant subsection here is (a)(3), which outlines the attorney-client exception. Specifically, that subsection allows a session to be closed when it is needed:

(3) To consult with an attorney employed or retained by the public body in order to preserve the attorney-client privilege between the attorney and the public body, which privilege is hereby acknowledged. General policy matters may not be discussed in a closed session and nothing herein shall be construed to permit a public body to close a meeting that otherwise would be open merely because an attorney employed or retained by the public body is a participant. The public body may consider and give instructions to an attorney concerning the handling or settlement of a claim, judicial action, mediation, arbitration, or administrative procedure. If the public body has approved or considered a settlement, other than a malpractice settlement by or on behalf of a hospital, in closed session, the terms of that settlement shall be reported to the public body and entered into its minutes as soon as possible within a reasonable time after the settlement is concluded.

The polar star in statutory construction is that the intent of the legislature controls. *State v. Fulcher*, 294 N.C. 503, 520, 243 S.E.2d 338, 350 (1978). "[T]hat intent must be found from the language of the act, its legislative history and the circumstances surrounding its adoption which throw light upon the evil sought to be remedied." *Milk Commission v. Food Stores*, 270 N.C. 323, 332, 154 S.E.2d 548,

555 (1967). Prior to the 1994 amendments, the Open Meetings Law contained two relevant exceptions. The first allowed sessions to be closed in order for the government body:

> (4) To consider the validity, settlement, or other disposition of a claim against or on behalf of the public body . . . ; or the commencement, prosecution, defense, settlement, or litigation of a potential or pending judicial action or administrative proceeding in which the public body or an officer or employee of the public body is a party.

N.C. Gen. Stat. § 143-318.11(a) (amended 1994). The second exception allowed closed sessions:

> (5) To consult with an attorney employed or retained to represent the public body, to the extent that confidentiality is required in order to preserve the attorney-client privilege between the attorney and the public body.

*Id.* Thus, prior to the 1994 amendments, a pending or threatened claim was required before a government body could go into closed session without the presence of an attorney. However, any attorney-client privileged matters could serve as the pretext for going into closed session with an attorney, whether a claim was pending or not.

By the 1994 amendments, however, these exceptions were repealed and the exception in present subsection (a)(3) was enacted. Plaintiff points out that the second half of the present exception does speak about claims and settlements, whereas the former attorney-client exception in subsection (a)(5) spoke nothing of claims or settlements, instead focusing on generally privileged matters. Thus, plaintiff contends that the legislature necessarily intended that the present attorney-client exception include a requirement that a specific claim be either pending or threatened. However, upon examination of the various committee drafts leading up to the 1994 amendments, we disagree with plaintiff's interpretation.

The original bill in the House ("original bill") proposed to rewrite the two pre-1994 exceptions and allow closed sessions:

> (3) When a closed meeting is required to permit a public body to receive advice from an attorney employed or retained by the public body with respect to a judicial proceeding in which the public body has a direct interest. As used herein, "judicial

proceeding" shall mean a pending or imminent lawsuit, appeal, arbitration, or administrative proceeding before a state or federal court or other judicial or quasi-judicial tribunal. The public body shall be deemed to have a "direct interest" in a judicial proceeding if it is a party or if it is the governing or representative body of a party. A judicial proceeding shall be deemed to be "imminent" if it has been publicly threatened or if the public body has been notified in writing of its probable occurrence.

Open Meetings Law Changes, Ch. 570, 1993 N.C. Sess. Law, H.B. 120 H1, at 5. Thus, under the original bill, a pending or threatened claim was required to invoke the new exception—general attorney-client privileged matters alone could not serve as grounds to close a meeting.

The House Judiciary Committee then substituted the original bill with its own version ("the committee substitute"). That draft permitted closed sessions:

(3) When a closed session is required to permit an attorney employed or retained by the public body to provide legal advice with respect to (I) the public body's rights and obligations pursuant to an existing or proposed contract to which the public body is or will be a party; or (ii) a pending, threatened, or contemplated judicial proceeding in which the public body has a direct interest. . . .

Open Meetings/Records Law Changes, Ch. 570, 1993 N.C. Sess. Law, H.B. 120 H2, at 5. Thus, although different language was used, the committee substitute still required a claim to be either pending or threatened.

On the House floor, the exception was again amended to permit closed sessions:

(3) When a closed session is required in order to preserve the attorney client privilege between the attorney and the public body, or to permit an attorney employed or retained by the public body to provide legal advice with respect to . . . [no changes from committee substitute].

Open Meetings/Records Law Changes, Ch. 570, 1993 N.C. Sess. Law, H.B. 120 H3, at 5. Thus, the House floor amendment proceeded to

allow closed sessions for general attorney-client matters, without regard to any pending or threatened claims.

The Senate Judiciary Committee then amended the exception once more. Its draft permitted closed sessions:

> (3) To consult with an attorney employed or retained by the public body in order to preserve the attorney-client privilege between the attorney and the public body, which privilege is hereby acknowledged. General policy matters may not be discussed in a closed session and nothing herein shall be construed to permit a public body to close a meeting that otherwise would be open merely because an attorney employed or retained by the public body is a participant. The public body may consider and give instructions to an attorney concerning the handling or settlement of a claim, judicial action, or administrative procedure.

Open Meetings/Records Law Changes, Ch. 570, 1993 N.C. Sess. Law, H.B. 120 H4, at 3. This was the wording that was eventually adopted and passed into law.

Based upon this statutory history, we do not believe the legislature intended for the present attorney-client exception to be limited to a pending or threatened claim requirement. The House floor amendment affirmatively demonstrates that the members were concerned with the narrowness of both the original bill and the committee substitute because each required a claim to be specifically pending or threatened. Consequently, they—and the Senate Committee after them—focused on incorporating the attorney-client privilege in general, without regard to any pending or threatened claims. The reference to claims and settlements in the second half of the exception was never intended to create a limitation to the exception, but only to provide an illustration of what types of discussions can proceed in closed session. Accordingly, we hold that the present attorney-client exception in section 143-318.11(a)(3) does not require a claim to be pending or threatened before it may be invoked by the government body.

In analyzing the effect of the 1994 amendments, we do note the language in section 143-318.11(c) dealing with the procedural requirements of going into closed session. Specifically, that section states:

> (c) A public body may hold a closed session only upon a motion duly made and adopted at an open meeting. Every motion to

> close a meeting shall cite one or more of the permissible pur-
> poses listed in subsection (a) of this section. . . . *A motion
> based on subdivision (a)(3) of this section [the attorney-
> client exception] shall identify the parties in each existing
> lawsuit concerning which the public body expects to receive
> advice during the closed session.*

N.C. Gen. Stat. § 143-318.11 (1999) (emphasis added). While the last
sentence ostensibly supports plaintiff's interpretation that a pending
or threatened claim, i.e. "each existing lawsuit," is required, again the
legislative history refutes it. This language is basically the same lan-
guage included in both the original bill before the House and in the
House Judiciary Committee Substitute. *See* Open Meetings Law
Changes, Ch. 570, 1993 N.C. Sess. Law, H.B. 120 H1, at 5-6; Open
Meetings/ Records Law Changes, Ch. 570, 1993 N.C. Sess. Law, H.B.
120 H2, at 7. As previously pointed out, the original bill and commit-
tee substitute required there to be a specific claim pending or threat-
ened. When these were subsequently amended to remove the claims
requirement, this language in subsection (c) was left in. Accordingly,
we feel this language was only included in response to the pending
claim requirement that existed in the original bill and committee sub-
stitute. The language was then left in only to require that litigants be
identified *if* in fact a pending claim existed.

In not adopting plaintiff's interpretation of the 1994 amendments,
we now review defendants' interpretation, the one adopted by the
trial court. Specifically, defendants contend that present subsection
(a) (3) actually contains two exceptions: first, outlining an exception
for matters within the attorney-client privilege and, second, outlining
an exception for discussions of specific claims. We feel such a con-
struction is both unnecessary and potentially problematic.

Such an interpretation is unnecessary in that discussions of spe-
cific claims necessarily fall within those matters protected by the
attorney-client privilege. To create a second exception just for pend-
ing claims would thus be redundant. Defendants' interpretation is
also potentially problematic in that it uses the same type of
dichotomy that existed in the pre-1994 law. As previously pointed out,
prior to the 1994 amendments, there were two separate exceptions:
one for discussing pending claims and one for attorney-client privi-
leged matters. An attorney's presence was not required for the former
but was required for the latter. By interpreting the present statute to
create a similar dichotomy, defendants implicitly suggest that an

attorney's presence is still not required when the government body is discussing pending claims. However, the plain language of the statute is clearly otherwise. The exception begins by explicitly stating that closed sessions are permitted only when the government body needs "[t]o consult with an attorney." N.C. Gen. Stat. § 143-318.11(a)(3) (1999). Obviously, an attorney's presence is needed for such consultations. We feel that the legislature only intended to create one exception in subsection (a)(3): matters falling within the attorney-client privilege. Discussions regarding claims are included within, not independent of, this exception.

We next ascertain whether the exception was applicable under these circumstances. In doing so, two considerations must be taken into account. First, in light of the general public policy favoring open meetings, the attorney-client exception is to be construed and applied narrowly. *Publishing Co. v. Board of Education*, 29 N.C. App. 37, 47, 223 S.E.2d 580, 587 (1976). This is so notwithstanding the countervailing policy favoring confidentiality between attorneys and clients. In this regard, our legislature has explicitly forbidden general policy matters from being discussed during closed sessions. N.C. Gen. Stat. § 143-318.11(a)(3) (1999). Furthermore, the privilege must be viewed in light of the traditional duties performed by attorneys; "public bodies [cannot simply] delegate responsibilities to attorneys and then cloak negotiations and [closed] sessions in secrecy by having attorneys present." *Fisher v. Maricopa County Stadium Dist.*, 912 P.2d 1345, 1353 (Ariz. Ct. App. 1995); *see also Minneapolis Star & Tribune Co. v. Housing & Redevelopment Auth.*, 251 N.W.2d 620, 625 (Minn. 1976) ("[T]he public officers and attorneys [can]not abuse their trust by extending the privilege as a mere conduit to suppress public observation of the decision-making process.") Thus, discussions regarding the drafting, phrasing, scope, and meaning of proposed enactments would be permissible during a closed session. Discussions regarding their constitutionality and possible legal challenges would likewise be so included. But as soon as discussions move beyond legal technicalities and into the propriety and merits of proposed enactments, the legal justification for closing the session ends.

Second, and equally as important, the burden is on the government body to demonstrate that the attorney-client exception applies. *Publishing Co.*, 29 N.C. App. at 47, 223 S.E.2d at 587. After all, "[r]equiring a plaintiff to plead and prove specific facts regarding alleged violations that are taking place in secret is a circular impos-

sibility." *Fisher*, 912 P.2d at 1351; *see also Prescott v. Town of Chino Valley*, 803 P.2d 891, 897 n.4 (Ariz. 1990) (citing opinions from other states in which the burden is placed on the government body to show the applicability of the attorney-client exception). But, in meeting its burden, government bodies may not simply treat the words "attorney-client privilege" or "legal advice" as some talisman, the mere utterance of which magically casts a spell of secrecy over their meetings. After all, "the incantation of a[n] [attorney-client] rationale is not an abracadabra to which this Court must defer judgment." *MacLennan v. American Airlines, Inc.*, 440 F. Supp. 466, 472 (E.D. Va. 1977). Rather, the government body can only meet its burden by providing some *objective* indicia that the exception is applicable under the circumstances. Mere assertions by the body or its attorney(s) in pleadings will not suffice. In camera review by the trial court of the minutes of the closed session provides the easiest and most effective way for the government body to objectively demonstrate that the closed session was in fact warranted. Such review affords the benefits of an impartial arbiter without the risks accompanying public disclosure of the minutes.

In light of these two important considerations, we are compelled to conclude that the record before us is insufficient to determine whether it was appropriate to close the session here. The only information in the record as to the content of the discussions at the closed session comes from the self-serving affidavits of the Board's staff attorney and clerk in attendance. Without some objective indicia to determine the applicability of the exception here, we are compelled to remand this matter to the trial court for in camera review of the minutes of the closed session. In reviewing the minutes, the trial court must apply the narrow construction of the attorney-client exception articulated herein. Accordingly, the trial court must review the minutes to ensure that neither general policy matters nor the propriety of the moratorium itself were ever discussed during the Board's closed session. If such matters were in fact discussed, defendants would be in violation of the Open Meetings Law, and plaintiff would be entitled to the minutes of the closed session following a redaction by the trial court of any matters that were properly within the attorney-client privilege.

[2] Finally, plaintiff argues that, even if the closed session was warranted under the attorney-client exception, it is still entitled to public disclosure of the minutes of the closed session pursuant to the Public Records Law. *See* N.C. Gen. Stat. § 132-9(a) (1999). Although this

MULTIMEDIA PUBL'G OF N.C., INC. v. HENDERSON COUNTY

[136 N.C. App. 567 (2000)]

statute grants the public access to certain records, including the minutes of open sessions, the Open Meetings Law contains an important limitation to the Public Records Law: "[M]inutes or an account of a closed session conducted in compliance with G.S. 143-318.11 may be withheld from public inspection *so long as public inspection would frustrate the purpose of a closed session.*" N.C. Gen. Stat. § 143-318.10(e) (emphasis added).

Plaintiff argues that, because the fruits of the closed session, i.e. the amended moratorium, were disclosed once the open session reconvened, disclosure of the entire branch, if not the tree, i.e. the minutes, would not "frustrate the purpose of the closed session." We believe this largely depends on what the minutes contain. If they reveal that only issues of drafting and phraseology were discussed behind closed doors, their disclosure ostensibly would not frustrate the purpose of the closed session, given that the actual wording of the amended moratorium was made public once the open session reconvened. However, if the minutes reveal discussions regarding potential claims or possible legal challenges, or how to deal with them, their disclosure would indeed appear to frustrate the purpose of the closed session. Ultimately, however, this is for the trial court to determine after an in camera review. In making its determination, the trial court should be guided by our Supreme Court's cautionary language:

> This standard requires consideration of time and content factors, allowing courts to tailor the scope of statutory protection in each case. Courts should ensure that the exception to the disclosure requirement should extend no further than necessary to protect ongoing efforts of a public body, respecting the policy against secrecy in government that underlies both the Public Records Law and the Open Meetings Law.

*News and Observer Publishing Co. v. Poole*, 330 N.C. 465, 480, 412 S.E.2d 7, 16 (1980).

In summary, we hold that the attorney-client exception in N.C. Gen. Stat. § 143-318.11(a)(3) contains no requirement that a specific announced claim be pending or threatened. Rather, through its 1994 amendments, our legislature intended to permit any general attorney-client privileged matters to serve as grounds for going into closed session. However, government bodies may only invoke the exception to the extent that the circumstances require it. Moreover, government bodies have the burden of establishing that the circumstances did in

fact necessitate the closed session. We know of no better arbiter of fairness than a Superior Court judge to receive, hear, and determine this issue. Accordingly, we vacate the trial court's orders and remand this matter for a review in camera of the minutes of the closed session. If the closed session was in fact warranted, the trial court must then also determine on remand whether disclosure of the minutes now would still frustrate the purpose behind the Board's going into closed session in the first place.

Vacated and remanded.

Judges GREENE and EDMUNDS concur.