## BROWN v. AMERICAN PARTNERS FED. CREDIT UNION

[183 N.C. App. 529 (2007)]

ROGER BROWN, Plaintiff v. AMERICAN PARTNERS FEDERAL CREDIT UNION, DORINDA M. SIMPSON, ANN BOONE and DAVID MORGAN, Defendants

RONNIE L. HERBIN, Plaintiff v. AMERICAN PARTNERS FEDERAL CREDIT UNION, DORINDA M. SIMPSON, ANN BOONE and DAVID MORGAN, Defendants

JOHN PRICE, Plaintiff v. AMERICAN PARTNERS FEDERAL CREDIT UNION, DORINDA M. SIMPSON, ANN BOONE and DAVID MORGAN, Defendants

MARGARET TICKLE, Plaintiff v. AMERICAN PARTNERS FEDERAL CREDIT UNION, DORINDA M. SIMPSON, ANN BOONE and DAVID MORGAN, Defendants

MILDRED JONES, Plaintiff v. AMERICAN PARTNERS FEDERAL CREDIT UNION, DORINDA M. SIMPSON, ANN BOONE and DAVID MORGAN, Defendants

ARTRES JOHNSON, Plaintiff v. AMERICAN PARTNERS FEDERAL CREDIT UNION, DORINDA M. SIMPSON, ANN BOONE and DAVID MORGAN, Defendants

JOSEPH O. COGDELL and KATHERINE C. COGDELL, Plaintiff v. AMERICAN PARTNERS FEDERAL CREDIT UNION, DORINDA M. SIMPSON, and ANN BOONE, Defendants

LYNDON K. HIATT, Plaintiff v. AMERICAN PARTNERS FEDERAL CREDIT UNION, DORINDA M. SIMPSON, ANN BOONE and DAVID MORGAN, Defendants

JUDY T. ELLISON, Plaintiff v. AMERICAN PARTNERS FEDERAL CREDIT UNION, DORINDA M. SIMPSON, ANN BOONE and DAVID MORGAN, Defendants

JERRY G. CHILTON, Plaintiff v. AMERICAN PARTNERS FEDERAL CREDIT UNION, DORINDA M. SIMPSON, ANN BOONE and DAVID MORGAN, Defendants

ALICE BRAY, Plaintiff v. AMERICAN PARTNERS FEDERAL CREDIT UNION, DORINDA M. SIMPSON, ANN BOONE and DAVID MORGAN, Defendants

JAMES MILLS, Plaintiff v. AMERICAN PARTNERS FEDERAL CREDIT UNION, DORINDA M. SIMPSON, ANN BOONE and DAVID MORGAN, Defendants

THOMAS HOOPER, Plaintiff v. AMERICAN PARTNERS FEDERAL CREDIT UNION, DORINDA M. SIMPSON, ANN BOONE and DAVID MORGAN, Defendants

No. COA06-392

(Filed 5 June 2007)

### 1. Appeal and Error— appealability—attorney-client privilege—substantial right

Determination of the attorney-client privilege affected a substantial right and is immediately appealable.

**2. Evidence— attorney-client privilege— minutes of board of directors meeting—report on legal advice**

A company's attorney-client privilege does not automatically apply to communications made in the presence of a person simply because that person may be an agent of the company in some capacity. In a case involving minutes of a board of directors meeting which reflected the CEO's report regarding legal advice, defendant credit union did not make a sufficient showing to meet any test for applying the privilege in a corporate context; plaintiff did not identify the people present at the meeting, their corporate responsibilities, and their relationship to the dispute at issue.

**3. Evidence— attorney-client privilege—letter from CEO to attorney—erroneously ordered disclosed**

The trial court abused its discretion by ordering defendant credit union to release a portion of a letter with attachments from its CEO to an attorney who had been retained to look into the affect of a bankruptcy on behalf of the credit union. The attorney-client privilege exists to protect the giving of information to the lawyer as well as the giving of professional advice.

**4. Evidence— attorney-client privilege—notes—conference with attorney**

The trial court abused its discretion by ordering the release of two pages of handwritten notes of a conference with an attorney where the notes themselves indicate that the privilege is applicable.

**5. Evidence— attorney-client privilege—notes—production properly compelled**

The trial court did not abuse its discretion by ordering the production of a page of handwritten notes in which defendant claimed attorney-client privilege. While the page of notes was part of a set of which the first two involved privileged communications, the content here addressed a different topic and does not suggest that it derives from a communication with the attorney.

**6. Evidence— work-product doctrine—minutes of board of directors meeting—only documents protected**

The trial court correctly ordered production of the minutes of defendant credit union's board of directors where defendant argued that the document contained information prepared in anticipation of litigation. The work product doctrine protects

only documents or tangible things and defendant did not show that the document itself was prepared in anticipation of litigation.

Appeal by defendant from order entered 1 December 2005 by Judge John O. Craig, III in Guilford County Superior Court. Heard in the Court of Appeals 7 December 2006.

> *Womble Carlyle Sandridge & Rice, PLLC, by Philip J. Mohr, for plaintiffs-appellees.*
>
> *Nexsen Pruet Adams Kleemeier, PLLC, by J. Scott Hale and Brian S. Clarke, for defendant-appellant, American Partners Federal Credit Union.*

GEER, Judge.

Defendant American Partners Federal Credit Union (the "Credit Union") appeals from an order requiring production of several documents that the Credit Union contends are protected from discovery by either the attorney-client privilege or the work product doctrine. Based upon our review of the disputed documents, submitted to this Court under seal, and our review of the record, we affirm in part and reverse in part. With respect to most of the documents, we hold that the Credit Union has failed to meet its burden of proving that the documents are protected from disclosure. It is, however, apparent from the face of other documents that they concern confidential communications between the Credit Union and its lawyer and that the trial court erred in ordering their production.

## Facts

In the late 1990s, plaintiffs, who are members of the Credit Union, invested significant sums from their personal retirement savings through David Morgan, an investment advisor employed by a firm known as Mariner Financial. Plaintiffs allege that the Credit Union and Morgan entered into an agreement under which the Credit Union agreed to actively promote Morgan's investment services to its members. The Credit Union also provided office space and other administrative assistance to Morgan in order to enable Morgan to market investment products to the Credit Union's members.

Plaintiffs assert that both the Credit Union and Morgan touted the investments marketed by Morgan as safe and guaranteed. Based on those representations and based on their belief that Morgan was acting as an employee or agent of the Credit Union, plaintiffs invested

their retirement savings as recommended by Morgan. According to plaintiffs, the investments performed satisfactorily for a period of time with plaintiffs receiving monthly distribution checks.

Eventually, the checks ceased arriving. Plaintiffs claim that when they asked about the status of the investments, both the Credit Union and Morgan assured them that the principal was intact, and the monthly distributions would resume shortly. In late 2003, however, plaintiffs learned that Morgan was filing for bankruptcy and further learned that the company in which their money had been invested—Evergreen, Ltd.—had filed for bankruptcy in January 2001. According to plaintiffs, Evergreen was an apparent *Ponzi* scheme. Plaintiffs claim that the Credit Union and Morgan engaged in a deliberate effort to mislead plaintiffs regarding the true status of the investments.

Each plaintiff filed a separate action, asserting claims against the Credit Union; its president and chief executive officer, Dorinda Simpson; its vice-president, Ann Boone; and Morgan. The individual complaints, which are largely similar in their allegations, seek damages for breach of fiduciary duty, fraud, negligent misrepresentation, violations of the North Carolina Investment Advisers Act, negligence, conspiracy, fraudulent concealment, constructive fraud, and unfair and deceptive trade practices.

In the course of discovery, the Credit Union refused to produce various documents and refused to answer certain interrogatories served by plaintiffs, claiming protection under either the work product doctrine or the attorney-client privilege. At the 6 October 2005 hearing on plaintiffs' motion to compel, the Credit Union submitted an affidavit of Simpson, its president and CEO. The Simpson affidavit provided, in full:

1. I am over 18 years of age and duly qualified to give this affidavit.

2 I have personal knowledge of the matters stated herein.

3. I am and at all relevant times hereto have been the President and CEO of Defendant American Partners Federal Credit Union (the "Credit Union").

4. At issue in this lawsuit is Plaintiff's investment in an entity known as Worldwide and/or Evergreen.

5. In or about January or February 2001 the Credit Union learned that Worldwide was part of or associated with an entity

known as Evergreen, which filed for bankruptcy in Florida. Based upon this information, the Credit Union authorized me to retain the Credit Union's attorney, Frank Drake, to look into the Worldwide/Evergreen bankruptcy on behalf of the Credit Union.

6. No employee, agent or representative of the Credit Union ever had any involvement with the offering or sale of investments in Worldwide or Evergreen. The Credit Union was never a fiduciary of any investor in Worldwide or Evergreen, including Plaintiff.

7. Communications between Mr. Drake and the Credit Union were made in confidence.

8. The matters set forth in documents identified as numbers 27, 36, 37, 38 and 39 in the Credit Union's Privilege Log dated October 6, 2005 all relate to matters on which Mr. Drake was being consulted as the Credit Union's attorney in the course of seeking legal advice for a proper purpose.

9. Information communicated between Mr. Drake and the Credit Union regarding this matter has not been shared with anyone other than individuals that needed to know such information based upon the management structure of the Credit Union.

10. Any contention that the Credit Union and Mr. Drake engaged in any type of improper conduct is absolutely baseless and lacks any credible support.

11. At no time has the Credit Union waived the attorney client-privilege [sic] between it and Mr. Drake.

The Credit Union submitted nothing further in support of its claim of privilege.

After considering the Simpson affidavit and conducting an *in camera* inspection of the documents claimed to be protected, the trial court entered an order requiring, *inter alia*, that the Credit Union produce the documents listed on its privilege log as numbers 1, 26, 27, and 39 and a redacted version of the document listed on the log as number 36. The Credit Union appealed the discovery order to the extent that it required production of these documents.

## Discussion

[1] As an initial matter, we note that the Credit Union's appeal is interlocutory. Our Supreme Court has held, however, that "[t]he trial

court's determination of the applicability of the [attorney-client] privilege or disclosure affects a substantial right and is therefore immediately appealable." *In re Investigation of the Death of Miller*, 357 N.C. 316, 343, 584 S.E.2d 772, 791 (2003). Accordingly, this appeal is properly before the Court.

In arguing that the trial court erred in ordering disclosure of the disputed documents, the Credit Union relies primarily upon the attorney-client privilege, "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 66 L. Ed. 2d 584, 591, 101 S. Ct. 677, 682 (1981). The privilege's "purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.*

Our Supreme Court has held that, in deciding whether the attorney-client privilege attaches to a particular communication, courts must consider whether:

"(1) the relation of attorney and client existed at the time the communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a proper purpose although litigation need not be contemplated and (5) the client has not waived the privilege."

*Miller*, 357 N.C. at 335, 584 S.E.2d at 786 (quoting *State v. McIntosh*, 336 N.C. 517, 523-24, 444 S.E.2d 438, 442 (1994)). The *Miller* Court held further that "[i]f any one of these five elements is not present in any portion of an attorney-client communication, that portion of the communication is not privileged." *Id.*

The party who claims the privilege bears the burden of demonstrating that the communication at issue meets all the requirements of the privilege. *Id.* at 336, 584 S.E.2d at 787. As the Supreme Court stressed in *Miller*:

"The burden is always on the party asserting the privilege to demonstrate each of its essential elements. This burden may not be met by 'mere conclusory or ipse dixit assertions,' or by a 'blanket refusal to testify.' *Rather, sufficient evidence must be adduced, usually by means of an affidavit or affidavits, to establish the privilege with respect to each disputed item.*"

*Id.* (emphasis added) (quoting 1 Scott N. Stone & Robert K. Taylor, *Testimonial Privileges* § 1.61, at 1-161 (2d ed. 1994)). *See also Multimedia Publ'g of N.C., Inc. v. Henderson County*, 136 N.C. App. 567, 576, 525 S.E.2d 786, 792 (holding that "[m]ere assertions" that privilege applies "will not suffice," but rather party must proffer "some *objective* indicia" that privilege applies), *disc. review denied*, 351 N.C. 474, 543 S.E.2d 492 (2000).

Having set forth the background principles that guide our analysis, we now turn to the specific documents at issue in this appeal. We review the trial court's rulings for an abuse of discretion. *Isom v. Bank of Am., N.A.*, 177 N.C. App. 406, 410, 628 S.E.2d 458, 461 (2006).[1]

### Document 27

[2] Document 27 is a copy of the Credit Union's minutes from its 17 April 2001 board of directors meeting. The Credit Union argues that these minutes are privileged because they reflect Simpson's report to the board regarding legal advice received from the Credit Union's attorney, Frank Drake, with respect to the failed Evergreen investments.

Our courts have held that "[c]ommunications between attorney and client generally are not privileged when made in the presence of a third person who is not an agent of either party." *State v. Murvin*, 304 N.C. 523, 531, 284 S.E.2d 289, 294 (1981). *See also State v. Brown*, 327 N.C. 1, 21, 394 S.E.2d 434, 446 (1990) (recognizing same rule); *Harris v. Harris*, 50 N.C. App. 305, 316, 274 S.E.2d 489, 495 (same), *appeal dismissed and disc. review denied*, 302 N.C. 397, 279 S.E.2d 351 (1981). The Credit Union bore the burden of demonstrating that the attorney-client communication recorded in Document 27 was not made in the presence of a third party. The minutes state that a member of a "Supervisory Committee" was present at the meeting as well as an individual "from management" identified only as "Valerie Marsh." The minutes themselves do not clarify who these individuals are or the nature of their duties or responsibilities with respect to the Credit Union. Nothing in the record supplies this information, although the Credit Union, on appeal, cites to a federal

---

1. Although the Credit Union assigned as error the trial court's ruling with respect to Document 26, the Credit Union has chosen not to provide any argument or cite any authority with respect to that document. Accordingly, we deem this assignment of error abandoned. N.C.R. App. P. 28(b)(6) ("Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned.").

statute discussing the requirement that credit unions have a super-visory committee.

According to the Credit Union, because the member of the Supervisory Committee and Valerie Marsh were "agents" of the Credit Union, the communication was made confidentially, and the privilege applies under the general rule set forth in *Murvin* and reiterated in *Miller*, 357 N.C. at 328, 584 S.E.2d at 782. Courts across the country have, however, recognized that corporations involve special consid-erations and the mere fact that an employee is the company's "agent" in some respects does not necessarily require that a communication involving that employee be found privileged. *See Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977) ("A problem arises, however, where the client is a corporation that can communicate or receive communications only by or through its human agents. In such a case the question arises as to whether the privilege extends to com-munications by or to all classes of corporate agents or employees or whether the privilege is limited to communications by or to only lim-ited classes of such agents or employees."), *modified in part on other grounds en banc*, 572 F.2d 596 (1978); *see also Upjohn*, 449 U.S. at 389-90, 66 L. Ed. 2d at 591, 101 S. Ct. at 682-83 ("Admittedly com-plications in the application of the privilege arise when the client is a corporation, which in theory is an artificial creature of the law, and not an individual . . . .").

We decline to accept the Credit Union's suggestion that simply because a person may be an agent of the company in some capacity, the company's attorney-client privilege automatically applies to com-munications made in the presence of that person. Indeed, the parties' briefs discuss the differing tests applied in other jurisdictions for applying the attorney-client privilege in a corporate context. *See id.* at 394, 66 L. Ed. 2d at 594, 101 S. Ct. at 685 (rejecting "control group" test, but holding that attorney-client privilege applied to communica-tions made by corporate employees to counsel at direction of corpo-rate superiors when communications concerned matters within scope of employees' corporate duties, and employees were aware they were being questioned so that corporation could obtain legal advice); *Diversified*, 572 F.2d at 609 (articulating "subject matter" test). The North Carolina appellate courts have not yet decided what test should apply as to the corporate attorney-client privilege.

Apart from our rejecting the Credit Union's general agency argu-ment, we need not, in this case, decide which test should apply in North Carolina since the Credit Union has failed to make a sufficient

BROWN v. AMERICAN PARTNERS FED. CREDIT UNION

[183 N.C. App. 529 (2007)]

showing to meet any test. Instead of identifying the people present at the board meeting, their corporate responsibilities, and their relationship to the dispute at issue, the Credit Union relied, before the trial court, solely on a sweeping, generic statement of confidentiality set forth in the Simpson affidavit: "Information communicated between Mr. Drake and the Credit Union regarding this matter has not been shared with anyone other than individuals that needed to know such information based upon the management structure of the Credit Union." This statement is not sufficient, standing alone, to meet the Credit Union's burden.

Our Supreme Court stressed in *Miller* that the party claiming the privilege must establish the elements of the privilege for each communication sought to be protected. 357 N.C. at 336, 584 S.E.2d at 787. Under *Miller*—and this Court's decision in *Multimedia Publishing*— a generic assertion of confidentiality as to multiple documents does not establish the applicability of the privilege to Document 27 in the absence of information regarding attendees at the board of directors meeting. *See Multimedia Publishing*, 136 N.C. App. at 576, 525 S.E.2d at 792 (holding that "self-serving affidavits" did not provide "objective indicia" and that applicability of attorney-client privilege had to be determined based on *in camera* review of minutes).

In its appellate brief, the Credit Union attempts to provide the specifics omitted from the Simpson affidavit, devoting two paragraphs to an explanation of why the committee member and Valerie Marsh are encompassed within the Credit Union's privilege. Since the record does not indicate that this information was ever presented to the trial court, it cannot be a basis for concluding the trial court abused its discretion. The Credit Union, therefore, failed to provide the trial court with "objective indicia" that all the meeting's attendees were encompassed within the privilege, and we hold the trial court did not err in ordering production of Document 27.

### Document 36

[3] Document 36 is a letter with attachments from Simpson to Frank Drake, an attorney who, according to the Simpson affidavit, was retained "to look into the Worldwide/Evergreen bankruptcy on behalf of the Credit Union." The trial court ruled that the Credit Union's "objection that said document is protected by the attorney client-privilege [sic] is sustained in part and overruled in part. [The Credit Union] shall produce document number 36, but is entitled to redacted [sic] the second paragraph of that document."

Although plaintiffs argue on appeal that Drake was not acting in his capacity as a lawyer for the Credit Union, the trial court necessarily rejected that position when it upheld the privilege as to the second paragraph of Document 36. Since plaintiffs have not cross-assigned error to that determination, plaintiffs' contention is not properly before this Court. *See* N.C.R. App. P. 10(d) ("Without taking an appeal an appellee may cross-assign as error any action or omission of the trial court which was properly preserved for appellate review and which deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken."); *Harllee v. Harllee,* 151 N.C. App. 40, 51, 565 S.E.2d 678, 685 (2002) ("In the instant case, the additional arguments raised in plaintiff-appellee's brief, if sustained, would provide an *alternative* basis for upholding the trial court's determination that the premarital agreement is invalid and unenforceable. However, plaintiff failed to cross-assign error pursuant to Rule 10(d) to the trial court's failure to render judgment on these alternative grounds. Therefore, plaintiff has not properly preserved for appellate review these alternative grounds.").

As this Court has acknowledged, the attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable counsel to give sound and informed advice." *Evans v. United Servs. Auto. Ass'n,* 142 N.C. App. 18, 31-32, 541 S.E.2d 782, 790-91, *cert. denied,* 353 N.C. 371, 547 S.E.2d 810 (2001). Based upon our review of Document 36, it is apparent that Simpson was conveying information to Drake, in this letter, material to the Evergreen bankruptcy, the matter upon which Drake had been retained. It appears that the trial court may have believed that the majority of the letter should be produced because it recited "facts" that otherwise would not be privileged. Nevertheless, as the United States Supreme Court has observed: " 'A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, "What did you say or write to the attorney." ' " *Upjohn,* 449 U.S. at 395-96, 66 L. Ed. 2d at 595, 101 S. Ct. at 685-86 (quoting *City of Philadelphia v. Westinghouse Elect. Corp.,* 205 F. Supp. 830, 831 (E.D. Pa. 1962)). Based upon this reasoning, we believe that it would be manifestly unreasonable to require the Credit Union to disclose to plaintiffs what information it felt that its lawyer should have in advising it. Accordingly, we hold that the trial court abused its discretion in ordering the production of Document 36.

BROWN v. AMERICAN PARTNERS FED. CREDIT UNION

[183 N.C. App. 529 (2007)]

### Document 39

[4] Document 39 consists of three pages of handwritten notes. The Credit Union claims that all three pages contain Simpson's handwritten notes of a conference she had with Frank Drake and, as such, are privileged communications. The Simpson affidavit did not, however, specifically discuss this document, and the record contains no other evidence to support the Credit Union's assertions on appeal regarding the notes. Thus, we can only determine the applicability of the privilege based upon what the notes reveal on their face.

Pages two and three of Document 39 both appear on stationery with the same logo, and the text suggests that the third page is a continuation of the notes on the second page. The content of these pages indicates that the notations relate to legal advice provided by Drake in connection with the bankruptcy proceedings he was hired to monitor. We cannot perceive any basis on which to conclude that these pages do not fall within the ambit of the attorney-client privilege. The trial court, therefore, abused its discretion in ordering the disclosure of the last two pages of Document 39.

[5] The first page, however, is inscrutable. This page involves handwriting on a blank piece of paper with no obvious connection to the next two pages. Indeed, the content of this page addresses a different subject than that contained on the other two pages. Whereas the second and third pages specifically indicate that the information derives directly from a communication with Drake, the content on the first page is utterly devoid of any suggestion of origin. We simply cannot tell whether Drake had anything to do with these notations. The trial court, accordingly, did not abuse its discretion in compelling production of this page.

### Document 1

[6] Document 1 is a copy of the minutes from the Credit Union's Board of Directors meeting on 16 December 2003. On appeal, the Credit Union argues that both the attorney-client privilege and work product doctrine apply. Before the trial court, however, the Credit Union relied only on the work product doctrine. Specifically, the Credit Union's privilege log asserted only work product as an objection to production of Document 1. Further, the Credit Union's assignment of error mentions only the work product doctrine. Consequently, we will not address the argument that Document 1 enjoys protection under the attorney-client privilege,

as this contention has not been properly preserved. *See* N.C.R. App. P. 10(a)-(b).

The work product doctrine prohibits an adverse party from compelling "the discovery of documents and other tangible things that are 'prepared in anticipation of litigation' unless the party has a substantial need for those materials and cannot 'without undue hardship . . . obtain the substantial equivalent of the materials by other means.' " *Long v. Joyner*, 155 N.C. App. 129, 136, 574 S.E.2d 171, 176 (2002) (quoting N.C. Gen. Stat. § 1A-1, Rule 26(b)(3)), *disc. review denied*, 356 N.C. 673, 577 S.E.2d 624 (2003). This Court has held that "the party asserting work product privilege bears the burden of showing '(1) that the material consists of documents or tangible things, (2) which were prepared in anticipation of litigation or for trial, and (3) by or for another party or its representatives which may include an attorney, consultant, surety, indemnitor, insurer or agent.' " *Evans*, 142 N.C. App. at 29, 541 S.E.2d at 789 (quoting *Suggs v. Whitaker*, 152 F.R.D. 501, 504-05 (M.D.N.C. 1993)).

As this Court has recognized, "[m]aterials that are prepared in the ordinary course of business . . . are not protected by the work product immunity." *Id.* at 28, 541 S.E.2d at 789. As board of directors minutes, Document 1 appears to simply be a routinely-generated record of regular Credit Union business; the Credit Union submitted nothing to the trial court suggesting otherwise. We, therefore, find untenable any assertion that Document 1 constitutes work product. *See Cook v. Wake County Hosp. Sys., Inc.*, 125 N.C. App. 618, 625-26, 482 S.E.2d 546, 551-52 (1997) (holding that hospital accident reports prepared as part of routine hospital procedure were not shielded from discovery by work product doctrine).

Indeed, the Credit Union makes no attempt to argue that the minutes themselves constitute work product, but rather asserts that Document 1 is "protected from disclosure because it contains information that was prepared in anticipation of litigation." The Credit Union states further that "information contained in the last paragraph on page 3 [of the document] concerns actions taken by [the Credit Union] in anticipation of litigation." The work product doctrine, however, protects only " 'documents or tangible things.' " *Evans*, 142 N.C. App. at 29, 541 S.E.2d at 789 (quoting *Suggs*, 152 F.R.D. at 504). It does not shield from disclosure actions taken in anticipation of litigation or information contained in a document that does not constitute work product. Because the Credit Union has failed to show that Document 1 itself, as opposed to any action or conduct discussed therein, was

prepared in anticipation of litigation, we affirm the trial court's order as to this document.[2]

## Conclusion

We affirm the trial court's order to the extent it required production of Documents 1, 26, 27, and the first page of Document 39. We reverse the order with respect to Document 36 and the second and third pages of Document 39.

Affirmed in part; reversed in part.

Judges LEVINSON and JACKSON concur.

---

2. With respect to both Document 27 and Document 1, the Credit Union notes in footnotes that it withheld the documents in their entirety because the portions the Credit Union agreed were not protected by privilege were "not relevant to any claim or defense in the Actions and are not likely to lead to the discovery of admissible evidence." The Credit Union did not, however, assign error to the trial court's decision to require production of the entire document—including any irrelevant portions—and, therefore, we do not address that issue. *See* N.C.R. App. P. 10(a) ("Except as otherwise provided herein, the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal in accordance with this Rule 10.").