IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-589

Filed 4 March 2026

Harnett County, No. 23CV002578-420

PAULA M. MCGEHEE, Executrix of the ESTATE OF TONY MILLER MCGEHEE, Plaintiff,

v.

MARK ADAM FARBER, M.D., Individually; FERNANDO MOTTA, M.D., Individually; and PAUL BRIAN TESSMANN, M.D., Individually, Defendants.

Appeal by Defendants Mark Adam Farber, M.D.; Fernando Motta, M.D.; and Paul Brian Tessmann, M.D.; and Non-Parties UNC Health; Melina R. Kibbe, M.D.; Harvey L. Lineberry II, Ph.D.; David Gerber, M.D.; Ron Falk, M.D.; Elise Maggioncalda, M.D.; Austin Flick, M.D.; Justin Myers, D.O.; and Abhi Mehrotra, M.D. from order entered 28 February 2025 by Judge Thomas H. Lock in Harnett County Superior Court. Heard in the Court of Appeals 13 January 2026.

*Robinson, Bradshaw & Hinson, P.A., by Matthew W. Sawchak, Erik R. Zimmerman, and Clara Nieman, for all Appellants.*

*Cranfill Sumner, LLP, by Ryan Shuirman and Kelley M. Petcavich, for Non-Parties UNC Health; Melina R. Kibbe, M.D.; Harvey L. Lineberry, II, Ph.D.; David Gerber, M.D.; Ron Falk, M.D.; Elise Maggioncalda, M.D.; Austin Flick, M.D.; Justin Myers, D.O.; and Abhi Mehrotra, M.D.*

*Walker Allen, LLP, by Barry Cobb, for Defendants-Appellants Mark Adam Farber, M.D.; and Fernando Motta, M.D.*

*Ellis & Winters, LLP, by Alex J. Hagan, for Defendant-Appellant Paul Brian Tessmann, M.D.*

*The Melvin Law Firm, P.A., by R. Bailey Melvin, for Plaintiff-Appellee Paula M. McGehee, Executrix of the Estate of Tony Miller McGehee.*

COLLINS, Judge.

This appeal arises from a discovery dispute in a medical malpractice action and involves three privileges: The Patient Safety and Quality Improvement Act, the medical review-committee privilege, and the physician-patient privilege. Appellants are three UNC Health physicians, Defendants Mark Adam Farber, M.D.; Fernando Motta, M.D.; and Paul Brian Tessmann, M.D.; non-party UNC Health; and eight non-party UNC physicians, Melina R. Kibbe, M.D.; Harvey L. Lineberry II, Ph.D.; David Gerber, M.D.; Ron Falk, M.D.; Elise Maggioncalda, M.D.; Austin Flick, M.D.; Justin Myers, D.O.; and Abhi Mehrotra, M.D. Appellee is Plaintiff Paula M. McGehee in her capacity as Executrix of her deceased husband's estate.

Appellants appeal from an order entered 28 February 2025 directing UNC Health to produce certain documents subject to a protective order and allowing Plaintiff to depose the subpoenaed non-party physicians regarding past incidents involving Dr. Farber. For the reasons discussed herein, we affirm in part, vacate in part, and remand to the trial court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Decedent Tony Miller McGehee was seen on 8 August 2021 at UNC Medical Center for right flank pain that radiated to his groin. Decedent had been transferred

to UNC Medical Center from the Central Carolina Hospital Emergency Department after a CT scan of his abdomen and pelvis was concerning for aortic dissection, and a subsequent CT scan of his chest revealed findings consistent with a Stanford Type B aortic dissection.

Upon his arrival at UNC Medical Center, a UNC radiologist interpreted the CT scan from Central Carolina Hospital and reported findings consistent with a Stanford Type A aortic dissection. Dr. Motta ordered a CT scan of Decedent's chest, abdomen, and pelvis. A UNC radiologist interpreted the scan and reported findings consistent with a Stanford Type A aortic dissection.

Dr. Tessmann admitted Decedent to the ICU to perform a cardiac-gated CT scan to evaluate for a retrograde intramural hematoma. Cardiac-gated CT scans were performed on 11 August 2021 and 13 August 2021; both revealed findings consistent with a Stanford Type A aortic dissection. Defendants discharged Decedent from UNC Medical Center on 13 August 2021 with instructions to follow up in a month. The next morning, Decedent went into cardiac arrest and was transferred to Cape Fear Valley Medical Center where he died of an aortic aneurysm and aortic dissection.

Decedent's wife, as Executrix of his estate, filed suit against Defendants alleging, in relevant part, that Defendants were negligent in treating Decedent. Defendants answered Plaintiff's complaint, denying the substantive allegations.

Plaintiff subpoenaed Drs. Kibbe, Lineberry, Gerber, and Falk to appear and

testify at a deposition and to produce:

> 1. Any incident reports filed that is in any way related to the care given to [Decedent]
>
> . . . .
>
> 3. Any complaints filed against Dr. Mark Adam Farber by residents, staff, other UNC employees or patients
>
> 4. Any and all documents regarding any training, punishment or discipline Dr. Mark Adam Farber has received while employed by UNC.

Plaintiff also subpoenaed Drs. Maggioncalda, Flick, and Myers to appear and testify at a deposition. All subpoenaed physicians filed motions to quash or, in the alternative, for a protective order on the grounds that the subpoenas seek privileged peer review information and documents that constitute patient safety work product protected by the Patient Safety and Quality Improvement Act of 2005 ("Patient Safety Act").

Plaintiff also subpoenaed UNC Health to produce these same documents. UNC Health filed a motion to quash or, in the alternative, for a protective order on the grounds that the subpoena seeks privileged peer review information, documents that constitute patient safety work product protected by the Patient Safety Act, and documents that implicate the Protected Health Information ("PHI") of non-party patients under the Health Insurance Portability and Accountability Act ("HIPAA") and North Carolina law. In support of its motion, UNC Health submitted as exhibits copies of its procedures for creating hospital peer review committees, the bylaws of its medical staff and accompanying medical staff organization manual, a membership

agreement with The Quality Center Patient Safety Organization ("Patient Safety Organization"), its Patient Safety Event Reporting policy, a privilege log containing an entry for a Safety Awareness for Everyone ("SAFE") report regarding Decedent's care, and an affidavit of Dr. David Zvara, Chief Medical Officer of UNC Hospitals.

After a hearing on 21 January 2025, the trial court entered an order denying UNC Health's motion to quash and allowing its motion for a protective order, ordering it to produce the subpoenaed documents and ruling that Plaintiff's counsel may question the subpoenaed physicians about "any manner related to the care given to [Decedent] and their knowledge of any other incidents involving Dr. Farber where his care or his interactions with patients, staff and employees may have been called into question." Defendants and the Non-Parties appealed.

## II.   DISCUSSION

### A. Appellate Jurisdiction

As a threshold issue, we must determine whether we have jurisdiction to review this appeal from an interlocutory discovery order.

"An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. Durham*, 231 N.C. 357, 362 (1950) (citation omitted). Immediate appeal from an interlocutory order may be allowed in several instances, including where "the trial court's decision deprives the appellant of a substantial right" that will be lost absent immediate review pursuant

to N.C. Gen. Stat. §§ 1-277(a) and 7A-27(b)(3)(a). *Woody v. Vickrey*, 276 N.C. App. 427, 433 (2021) (citation omitted).

"An interlocutory order affects a substantial right if the order deprives the appealing party of a substantial right which will be lost if the order is not reviewed before a final judgment is entered.*" Cape Homeowners Ass'n, Inc. v. S. Destiny, LLC*, 292 N.C. App. 374, 378 (2024) (quotation marks and citation omitted). When "a party asserts a statutory privilege which directly relates to the matter to be disclosed under an interlocutory discovery order, and the assertion of such privilege is not otherwise frivolous or insubstantial, the challenged order affects a substantial right . . . ." *Sharpe v. Worland*, 351 N.C. 159, 166 (1999).

Here, Appellants argue that the trial court's order affects a substantial right because UNC Health asserted "the federal privilege under the Safety Act" for the SAFE report regarding Decedent's care; "North Carolina's privilege for the proceedings of medical-review committees" under N.C. Gen. Stat. § 131E-95(b); and "the doctor-patient privilege in N.C. Gen. Stat. § 8-53." As the assertion of these privileges is not otherwise frivolous or insubstantial, we hold that the challenged order affects a substantial right. *Id.* Accordingly, we have jurisdiction to review this appeal.

## B. Standard of Review

Although discovery orders are ordinarily reviewed for abuse of discretion, *Midgett v. Crystal Dawn Corp.*, 58 N.C. App. 734, 737 (1982), an order compelling the

disclosure of information claimed to be statutorily privileged presents a legal question, and our review is therefore de novo. *See Hammond v. Saini*, 367 N.C. 607, 609-10 (2014).

A party asserting a statutory privilege must demonstrate that the privilege applies and may not rely on "mere conclusory assertions." *Id.* at 610. Instead, the party must provide sufficient evidence establishing that the disputed material falls within the scope of the privilege as defined by statute. *Brown v. Am. Partners Fed. Credit Union*, 183 N.C. App. 529, 534 (2007). A party may attempt to meet this burden by submitting affidavits setting forth facts sufficient to establish the applicability of the privilege to the particular documents being withheld or by submitting the allegedly privileged materials for an in camera review. *Id.* at 534-35.

## C. Patient Safety Act

Appellants first argue that the trial court erred by ordering UNC Health to disclose the SAFE report because it is privileged patient safety work product under the Patient Safety Act.

The Patient Safety Act, 42 U.S.C. §§ 299b-21 *et seq.*, establishes a federal privilege and confidentiality provisions for patient safety work product, subject to statutory exceptions. 42 U.S.C. §§ 299b-22(a)-(c). Patient safety work product is defined in three ways: (1) "data, reports, records, memoranda, analysis . . . or written or oral statements . . . assembled or developed by a provider for reporting to a patient safety organization and are reported to a patient safety organization," *id.*

§ 299b-21(7)(A)(i)(I); (2) such things developed by a patient safety organization, *id.* § 299b-21(7)(A)(i)(II); and (3) such things that "identify or constitute the deliberations or analysis of, or identify the fact of reporting pursuant to, a patient safety evaluation system," *id.* § 299b-21(7)(A)(ii). The definition of patient safety work product excludes "information that is collected, maintained, or developed separately, or exists separately, from a patient safety evaluation system[,]" and such "separate information or a copy thereof reported to a patient safety organization shall not by reason of its reporting be considered patient safety work product." *Id.* § 299b-21(7)(B).

The first definition protects documents that "are assembled or developed by a provider *for reporting* to a patient safety organization and are reported to a patient safety organization[.]" *Id.* § 299b-21(7)(A)(i)(I) (emphasis added). The critical inquiry is the purpose for creating the information; thus, "the information will only be considering patient safety work product if it is created '*for the purpose of* reporting' to a patient safety organization." *Daley v. Teruel,* 107 N.E.3d 1028, 1037 (Ill. App. Ct. 2018) (citation omitted).

Here, UNC Health has not met its burden of demonstrating that the SAFE report is protected by the Patient Safety Act. The UNC Health Patient Safety Event Reporting policy governing SAFE reports indicates that UNC Health uses SAFE reports for multiple internal purposes, including routine quality improvement purposes and operational review: "Within a culture of safety, there is continuous

reporting of patient safety concerns or events in order for these occurrences to be analyzed and processes changed or systems improvements made." Dr. Zvara acknowledged these additional uses in his affidavit:

> 11. UNC Hospitals' Patient Safety Evaluation System (PSES) exists anywhere UNC Hospitals conduct patient safety activity and extends anywhere the use of Patient Safety Work Product ("PSWP") may result in quality improvement. PSWP is considered "collected" when the information is entered into the SAFE event reporting system. Submission of PSWP into the PSES is performed with the intention of *ultimately* reporting PSWP to the [Patient Safety Organization]. PSWP that is derived from analysis and deliberations shall be marked "PSWP – Analysis within the PSES" or "Confidential."

(emphasis added). Although UNC Health ultimately submitted the SAFE report to the Patient Safety Organization, UNC Health may not shield otherwise discoverable internal documents from disclosure merely by routing them through their patient safety evaluation system. UNC Health has not met its burden of demonstrating that the SAFE report was created *for* reporting to a patient safety organization. The court thus did not err by concluding that Appellants failed to show that the SAFE report was created for reporting to a patient safety organization within the meaning of 42 U.S.C. § 299b-21(7)(A)(i)(I).

Appellants cite *In re BayCare Med. Grp., Inc.*, for the proposition that the Patient Safety Act may protect from disclosure documents created, used, or maintained for multiple purposes under the first definition, so long as the documents constitute patient safety work product under the statute. 101 F.4th 1287, 1291 (11th

Cir. 2024). But *BayCare* is neither binding nor persuasive, as it addressed the third definition of patient safety work product, not the first.

The SAFE report likewise does not "identify or constitute the deliberations or analysis of . . . a patient safety evaluation system" because, as UNC Health concedes, it created the SAFE report which "analyzes Mr. McGehee's condition and treatment." As the SAFE report does not include the deliberations or analysis of a patient safety evaluation system, it does not satisfy the third definition of patient safety work product under 42 U.S.C. § 299b-21(7)(A)(ii).

For the reasons stated above, the SAFE report does not constitute patient safety work product, and the court did not err by ordering UNC Health to disclose the report.

## D. Medical Review Privilege

Appellants next argue that the trial court erred by ordering the subpoenaed non-party physicians to testify in depositions about "privileged discussions of medical-review committees."

The medical review privilege, less commonly referred to as the medical review-committee privilege, provides that "[t]he proceedings of a medical review committee, the records and materials it produces[,] and the materials it considers" are confidential and not considered public records. N.C. Gen. Stat. § 131E-95(b) (2025). These records and materials are not discoverable or admissible in any civil action against a hospital or a provider of professional health services "which results

from matters which are the subject of evaluation and review by the committee." *Id.* No person who attends a medical review committee meeting "shall be required to testify in any civil action as to any evidence or other matters produced or presented during the proceedings of the committee or as to any findings, recommendations, evaluations, opinions, or other actions of the committee or its members." *Id.* Although a committee member or a person who testifies before the committee may testify in a civil action, that individual cannot be questioned regarding testimony given before the committee or any opinions formed as a result of the committee hearings. *Id.* The medical review privilege does not, however, extend to "information, documents, or records otherwise available[.]" *Id.*

The purpose of N.C. Gen. Stat. § 131E-95(b) is to promote medical staff candor and medical review committee objectivity. *Shelton v. Morehead Memorial Hospital*, 318 N.C. 76, 83 (1986). The privilege does not extend to "information . . . available[] from original sources other than the medical review committee . . . merely because it was presented during medical review committee proceedings[,]" and the statute's purpose is not violated by allowing materials otherwise available to "be discovered and used in evidence even though they were considered by [a] medical review committee." *Id.* at 83-84; *see also Armstrong v. Barnes*, 171 N.C. App. 287, 294 (2005) (holding that a doctor was not shielded from answering deposition questions about his drug abuse because he was "an original source . . . [of] the information sought

because he created and kn[ew] the details of his drug abuse outside the privileged proceedings of the [medical review] committee and the records it produced").

Here, the court ruled that Plaintiff's counsel may question the subpoenaed non-party physicians "about any matter related to the care given to [Decedent] and their knowledge of any other incidents involving Dr. Farber where his care or his interactions with patients, staff[,] and employees may have been called into question." At oral argument, the parties did not dispute the applicable law and essentially agreed that the court's order on this issue was overbroad. Plaintiff conceded that if a subpoenaed physician "solely learned" of information about Dr. Farber "only in a medical review committee hearing, then they wouldn't be required to testify about that."

The court correctly ordered that "Plaintiff's Counsel can *inquire* of these employees about any matter related to the care given to [Decedent] and their knowledge of any other incidents involving Dr. Farber where his care or his interactions with patients, staff[,] and employees may have been called into question." (emphasis added). We add, however, that the subpoenaed non-party physicians may not be *compelled to answer* such inquiries where their testimony would provide information gained solely through medical-review committee proceedings that is protected by the medical review privilege under N.C. Gen. Stat. § 131E-95. We thus vacate this portion of the order and remand to the trial court for clarification of this provision consistent with the law.

**E. Physician-Patient Privilege**

Appellants finally argue that the trial court erred by ordering UNC Health to produce a spreadsheet containing patient complaints that mention Dr. Farber because the spreadsheet is protected by the physician-patient privilege under N.C. Gen. Stat. § 8-53.

Under the physician-patient privilege, a physician may not be required to disclose any information "acquired in attending a patient in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon." N.C. Gen. Stat. § 8-53 (2025). Confidential information contained in medical records may be furnished only if authorized by the patient, or if deceased, by certain representatives. *Id.* The physician-patient privilege extends to oral communications and to information obtained by a physician through observation or examination during treatment. *Cates v. Wilson*, 321 N.C. 1, 14 (1987). "The physician-patient privilege is strictly construed and the patient bears the burden of establishing the existence of the privilege and objecting to the introduction of evidence covered by the privilege." *Mosteller v. Stiltner*, 221 N.C. App. 486, 487 (2012) (quotation marks and citations omitted).

Here, the spreadsheet contains complaints submitted to UNC Health's patient-relations department, not to treating physicians. Appellants offered no evidence that the information was communicated to a physician for treatment or derived from a physician's examination. Dr. Zvara's affidavit merely asserted that

the spreadsheet "implicates the Protected Health Information ('PHI') of patients other than the Plaintiff," but HIPAA's definition of PHI is broader than § 8-53 and does not establish a physician-patient privilege. *Compare* 45 C.F.R. § 160.103 (defining protected health information broadly to include individually identifiable health information transmitted or maintained in any form or medium) *with* N.C. Gen. Stat. § 8-53 (limiting physician-patient privilege to information acquired in attending a patient and necessary to enable medical treatment).

The court reviewed the spreadsheet in camera and found no basis to conclude that it contained privileged information. Upon our review, we conclude the same. Furthermore, the court ordered UNC Health to redact any protected health information and to produce the spreadsheet subject to a protective order.

Because the spreadsheet does not contain privileged physician-patient information under section 8-53, the court did not err by ordering UNC Health to produce it.

### III. CONCLUSION

In sum, the trial court did not err by ordering UNC Health to disclose the SAFE report, as it does not constitute patient safety work product under 42 U.S.C. § 299b-21(7)(A)(i) or (ii) and is therefore not privileged. The court erred to the extent it ordered UNC Health and its employees to produce documents or provide testimony regarding information that is protected by the medical review privilege under N.C. Gen. Stat. § 131E-95. The court did not err by ordering UNC Health to disclose

redacted patient complaints against Dr. Farber because these are not protected by the physician-patient privilege under N.C. Gen. Stat. § 8-53.  Accordingly, we affirm in part, vacate in part, and remand to the trial court to clarify in its order that UNC Health and its employees are not required to testify to information that is protected by the medical review privilege.

AFFIRMED IN PART; VACATED IN PART; AND REMANDED.

Judges ZACHARY and CARPENTER concur.