IN THE SUPREME COURT OF NORTH CAROLINA

No. 248PA16

Filed 3 November 2017

FRIDAY INVESTMENTS, LLC

v.

BALLY TOTAL FITNESS OF THE MID-ATLANTIC, INC. f/k/a Bally Total Fitness of the Southeast, Inc. f/k/a Holiday Health Clubs of the Southeast, Inc. as successor-in-interest to Bally Total Fitness Corporation; and BALLY TOTAL FITNESS HOLDING CORPORATION

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 788 S.E.2d 170 (2016), affirming an order entered on 13 April 2015 by Judge Jesse B. Caldwell III in Superior Court, Mecklenburg County. Heard in the Supreme Court on 29 August 2017.

*Horack, Talley, Pharr & Lowndes, P.A., by Keith B. Nichols, for plaintiff-appellee.*

*Knox, Brotherton, Knox & Godfrey, by Lisa G. Godfrey; and Burt & Cordes, PLLC, by Stacy C. Cordes, for defendant-appellants.*

NEWBY, Justice.

In this case we consider whether an attorney–client relationship exists between defendants and a non-party that contractually agreed to indemnify defendants. Recognizing its tripartite nature, we conclude that the contractual duty to defend and indemnify gives rise to an attorney–client relationship. Nonetheless, because defendants failed to request that the trial court provide written findings of fact and did not present in a timely manner the documents at issue for appellate

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATL., INC.

*Opinion of the Court*

review, we must presume the trial court found facts sufficient to support its conclusion. Given the bare record before us, we cannot conclude that the trial court erroneously determined that the attorney–client privilege did not extend to the communications at issue. Accordingly, we modify and affirm the decision of the Court of Appeals.

In February 2000, the predecessor in interest to defendant Bally Total Fitness of the Mid-Atlantic, Inc. (Bally Mid-Atlantic) entered into a lease agreement with the predecessor in interest to Friday Investments, LLC (plaintiff) for a large commercial space in Charlotte, North Carolina, in which to place a health club.[1] Codefendant Bally Total Fitness Holding Corporation (Bally Holding), the parent company of both Bally Mid-Atlantic and the original tenant, guaranteed the lease. Bally Mid-Atlantic later sold some of its health clubs, including the Charlotte club, to Blast Fitness Group, LLC (Blast). The Asset Purchase Agreement between Bally Mid-Atlantic and Blast transferred any obligations arising under the real property leases of the clubs sold. The Agreement also included an indemnification clause, wherein Blast agreed to "defend, indemnify, and hold [defendants] . . . harmless of, from and against any

---

[1] Around 14 February 2000, Tower Place Joint Venture (Original Lessor), as landlord, and Bally Total Fitness Corporation (Original Lessee), as tenant, entered into a lease agreement for the property at issue. Friday Investments, LLC (plaintiff) is the current owner of the property at issue and successor in interest to Tisano Realty Inc., the successor in interest to the Original Lessor. Defendant Bally Mid-Atlantic is the successor in interest to the Original Lessee.

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATL., INC.

*Opinion of the Court*

Losses incurred . . . on account of or relating to . . . any Assumed Liabilities, including those arising from or under the Real Property Leases after the Closing."

On 9 May 2014, plaintiff sued defendants for payment of back rent and other charges due under the lease stemming from Blast's failure to pay rent on the space defendants had assigned to Blast. Defendants notified Blast of the lawsuit, and Blast promptly agreed to indemnify and defend defendants in accord with their Agreement. During discovery, counsel for plaintiff requested copies of "post-suit correspondence and documents exchanged between [defendants] and Blast." After defendants refused to comply, plaintiff moved to compel production of the requested documents. Defendants objected and moved for a protective order, asserting the attorney–client privilege. The trial court orally ordered defendants to produce the documents and a privilege log for *in camera* review.

On 2 April 2015, after completing its *in camera* review, the trial court notified counsel via e-mail that it had denied defendants' motion for a protective order and granted plaintiff's motion to compel. On 13 April 2015, the trial court entered its written order summarily denying defendants' motion for a protective order and granting plaintiff's motion to compel. At no point did either party request that the trial court make written findings of fact and conclusions of law. Defendants appealed the trial court's interlocutory order, successfully contending that the subject of the appeal affects a "substantial right." After settling the record on appeal, and after the

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATL., INC.

*Opinion of the Court*

briefing deadline had passed, defendants moved to submit the documents at issue under seal for *in camera* review by the Court of Appeals.

The Court of Appeals affirmed the trial court's grant of plaintiff's motion to compel. *Friday Invs., LLC v. Bally Total Fitness of the Mid-Atl., Inc.*, ___ N.C. App. ___, 788 S.E.2d 170 (2016). Before discussing the merits of the appeal, the Court of Appeals denied defendants' request to present the records for appellate review as untimely because the request was made after plaintiff had submitted its brief to the Court of Appeals. *Id.* at ___, 788 S.E.2d at 175; *see* N.C. R. App. P. 9(b)(5)(a). On the merits, the Court of Appeals held that a tripartite attorney–client relationship did not exist between defendants and Blast because "an indemnification provision in an asset purchase agreement, standing alone, is insufficient to create a common legal interest between a civil litigant indemnitee and a third-party indemnitor." *Friday Invs., LLC*, ___ N.C. App. at ___, 788 S.E.2d at 172. The Court of Appeals reasoned that defendants and Blast shared merely a common business interest and that this distinction rendered inapplicable our previous decision in *Raymond v. North Carolina Police Benevolent Ass'n*, 365 N.C. 94, 98, 721 S.E.2d 923, 926 (2011) (recognizing the tripartite attorney–client relationship). As a result, the attorney–client privilege did not extend to the communications between defendants and Blast. This Court allowed discretionary review. *Friday Invs., LLC v. Bally Total Fitness of the Mid-Atl., Inc.*, 369 N.C. 185, 793 S.E.2d 685 (2016).

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATL., INC.

*Opinion of the Court*

"The primary purpose of the discovery rules is to facilitate the disclosure prior to trial of any *unprivileged* information that is relevant and material to the lawsuit so as to permit the narrowing and sharpening of the basic issues and facts that will require trial." *Bumgarner v. Reneau*, 332 N.C. 624, 628, 422 S.E.2d 686, 688-89 (1992) (emphasis added) (citation omitted). Rule 26 provides for a broad scope of discovery, allowing "[p]arties [to] obtain discovery regarding any matter, *not privileged*, which is relevant to the subject matter involved in the pending action." N.C.G.S. § 1A-1, Rule 26(b)(1) (2015) (emphasis added).

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 682, 66 L. Ed. 2d 584, 591 (1981) (citation omitted). For the privilege to apply and thus exclude relevant evidence, "the relation of attorney and client [must have] existed at the time the [particular] communication was made." *In re Investigation of Miller*, 357 N.C. 316, 335, 584 S.E.2d 772, 786 (2003) (quoting *State v. McIntosh*, 336 N.C. 517, 523, 444 S.E.2d 438, 442 (1994)).

Historically, an attorney–client relationship arises between an attorney and a single client the attorney represents. *See id.* at 335, 584 S.E.2d at 786. This Court, however, has also recognized a multiparty attorney–client relationship in which an attorney represents two or more clients. *See Dobias v. White*, 240 N.C. 680, 685, 83 S.E.2d 785, 788 (1954) (indicating that an attorney–client relationship can exist when "two or more persons employ the same attorney to act for them in some business

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATL., INC.

*Opinion of the Court*

transaction"). "The rationale for recognizing this tripartite attorney-client relationship is that individuals with a common interest in the litigation should be able to freely communicate with their attorney, and with each other, to more effectively defend or prosecute their claims." *Raymond*, 365 N.C. at 99, 721 S.E.2d at 926 (citation omitted).

In *Raymond* a former police officer and member of the Southern States Police Benevolent Association (SSPBA) contacted the SSPBA and spoke with an SSPBA attorney in confidence, seeking legal advice regarding his recent demotion. *Id.* at 95-96, 721 S.E.2d at 924-25. The SSPBA then referred the officer to outside legal counsel paid for by the SSPBA. As a dues-paying member, the former officer's SSPBA membership entitled him to various SSPBA services, including legal representation in grievance and disciplinary matters. Recognizing the tripartite nature of the arrangement, this Court held that an attorney–client relationship existed between the former police officer, the SSPBA and its attorney, and the outside legal counsel selected by the association to represent the former officer. *Id.* at 99, 721 S.E.2d at 927. As such, any communications between them that also satisfied the five-factor test articulated in *State v. Murvin*, 304 N.C. 523, 531, 284 S.E.2d 289, 294 (1981), were privileged. *Raymond*, 365 N.C. at 100-01, 721 S.E.2d at 927-28.

Our decision in *Raymond* analogized the relationship between the officer, the SSPBA and an attorney for the association, and outside defense counsel to those relationships common in the insurance context. *See id.* at 98, 721 S.E.2d at 926 ("In

-6-

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATL., INC.

*Opinion of the Court*

the insurance context, courts find that the attorney defending the insured and receiving payment from the insurance company represents both the insured and the insurer . . . ." (citing *Nationwide Mut. Fire Ins. Co. v. Bourlon*, 172 N.C. App. 595, 602-03, 617 S.E.2d 40, 46 (2005), *aff'd per curiam*, 360 N.C. 356, 625 S.E.2d 779 (2006) (mem.))).  As in the insurance context, a tripartite attorney–client relationship arose from the officer and the SSPBA's common interest in the litigation, stemming from the officer's contractual relationship with the SSPBA as a dues-paying member.  *See Raymond*, 365 N.C. at 98, 721 S.E.2d at 926 ("[N]otwithstanding that usually only the insured has been sued, a tripartite attorney-client relationship exists because the interests of both the insured and the insurer in prevailing against the plaintiff's claim are closely aligned.").

"[A] contractual duty to defend and indemnify creates a common interest and tripartite relationship between the insurer, the insured, and the defense attorney." *Id.* at 98-99, 721 S.E.2d at 926 (citing *Bourlon*, 172 N.C. App. at 603-05, 617 S.E.2d at 46-47).  Like the common interest found between the insurer and the insured, an indemnification agreement creates a common interest between the indemnitor and the indemnitee in that the indemnitor contractually shares in the indemnitee's legal well-being because the agreement subjects the indemnitor to the "damages assessed and loss resulting from an adverse judgment." *Queen City Coach Co. v. Lumberton Coach Co.*, 229 N.C. 534, 536, 50 S.E.2d 288, 289 (1948) (citation omitted); *see also Dixie Container Corp. of N.C. v. Dale*, 273 N.C. 624, 627, 160 S.E.2d 708, 711 (1968)

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATL., INC.

*Opinion of the Court*

(noting that an indemnity contract "will be construed to cover all losses, damages, and liabilities which reasonably appear to have been within the contemplation of the parties"). The fact that indemnification relates to a business purpose does not sever but strengthens that common interest. *See Dobias*, 240 N.C. at 685, 83 S.E.2d at 788 (recognizing an attorney–client relationship between more than two individuals when "two or more persons employ the same attorney to act for them in some business transaction"). As a result, a tripartite attorney–client relationship arises because the interests of both the indemnitor and indemnitee in prevailing against the plaintiff's claim are contractually aligned, notwithstanding that usually only the indemnitee has been sued. *See Raymond*, 365 N.C. at 98, 721 S.E.2d at 926.

In all significant ways, the question of the formation of an attorney–client relationship here is indistinguishable from that resolved by our decision in *Raymond*. Blast contractually agreed to indemnify and defend defendants against any losses incurred relating to their real property lease. After this litigation commenced, defendants notified Blast of the litigation, and Blast engaged counsel to defend the case under the indemnification agreement. Like the common interest found in the insurance context, Blast's interest in defendants' legal well-being as indemnitees creates the common interest in this litigation: The indemnification provision subjects Blast to any damages that result from an adverse judgment against defendants. Accordingly, a tripartite attorney–client relationship exists between defendants, Blast, and their defense counsel.

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATL., INC.

*Opinion of the Court*

The mere fact that an attorney–client relationship exists, however, does not automatically trigger the attorney–client privilege. *See Dobias*, 240 N.C. at 684, 83 S.E.2d at 788 (Simply because "the evidence relates to communications between attorney and client alone does not require its exclusion."). For the attorney–client privilege to apply, the communication must satisfy the five-factor *Murvin* test:

> (1) the relation of attorney and client existed at the time the communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a proper purpose although litigation need not be contemplated and (5) the client has not waived the privilege.

*Murvin*, 304 N.C. at 531, 284 S.E.2d at 294 (citing 1 Henry Brandis, Jr., *Stansbury's North Carolina Evidence* § 62 (1973)). "[I]f any one of these five elements is not present in any portion of an attorney-client communication, that portion of the communication is not privileged." *Brown v. Am. Partners Fed. Credit Union*, 183 N.C. App. 529, 534, 645 S.E.2d 117, 121 (2007) (quoting *In re Miller*, 357 N.C. at 335, 584 S.E.2d at 786). "The trial court is best suited to determine, through a fact-sensitive inquiry, whether the attorney-client *privilege* applies to a specific communication." *Raymond*, 365 N.C. at 100, 721 S.E.2d at 927 (emphasis added) (citing *In re Miller*, 357 N.C. at 336, 584 S.E.2d at 787).

"Findings of fact and conclusions of law are necessary on decisions of any motion . . . only when requested by a party . . . ." N.C.G.S. § 1A-1, Rule 52(a)(2)

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATL., INC.

*Opinion of the Court*

(2015). The purpose of requiring findings of fact and conclusions of law by the trial court "is to allow meaningful review by the appellate courts." *O'Neill v. S. Nat'l Bank of N.C.*, 40 N.C. App. 227, 231, 252 S.E.2d 231, 234 (1979) (citation omitted). "When the trial court is not required to find facts and make conclusions of law and does not do so, it is presumed that the court on proper evidence found facts to support its judgment." *Estrada v. Burnham*, 316 N.C. 318, 324, 341 S.E.2d 538, 542 (1986), *superseded by statute*, N.C.G.S. § 1A-1, Rule 11(a) (Cum. Supp. 1988), *on other grounds as stated in Turner v. Duke Univ.*, 325 N.C. 152, 163-64, 381 S.E.2d 706, 712-13 (1989) (citations omitted).

A trial court's discovery ruling is reviewed for abuse of discretion, *see Firemen's Mut. Ins. Co. v. High Point Sprinkler Co.*, 266 N.C. 134, 143, 146 S.E.2d 53, 62 (1966), and will be overturned "only upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision," *In re Foreclosure of Lucks*, 369 N.C. 222, 228, 794 S.E.2d 501, 506 (2016) (quoting *State v. Riddick*, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986)).

Though a tripartite attorney–client relationship exists, we cannot conclude, given the bare record before us, that the trial court abused its discretion or misapplied the law in compelling disclosure of the communications at issue. The underlying trial court order compelling discovery contains neither findings of fact nor conclusions of law, as neither party requested them. Therefore, we must presume that the trial court found facts sufficient to support its determination that the communications at

FRIDAY INVS., LLC v. BALLY TOTAL FITNESS OF THE MID-ATL., INC.

*Opinion of the Court*

issue were not privileged. Moreover, defendants did not properly present the allegedly privileged documents for appellate review. *See State v. Alston*, 307 N.C. 321, 341, 298 S.E.2d 631, 644 (1983) ("It is the appellant's duty and responsibility to see that the record is in proper form and complete."). As such, the record merely contains a privilege log that briefly describes each of the allegedly privileged documents. Nothing in the privilege log or the trial court's order suggests that the trial court erroneously concluded that a tripartite attorney–client relationship had not formed or that the court misapplied the five-factor *Murvin* test. Given the record before us, we cannot conclude that the trial court's decision was so arbitrary that it could not have been the result of a reasoned decision.

In sum, we hold that Blast's contractual duty to defend and indemnify defendants created a tripartite attorney–client relationship. Nonetheless, the record before us fails to indicate that the trial court abused its discretion in determining that the post-litigation communications between defendants and Blast were not privileged. Accordingly, we modify and affirm the decision of the Court of Appeals. We remand this case to the Court of Appeals for further remand to the trial court for additional proceedings not inconsistent with this opinion.

MODIFIED AND AFFIRMED; REMANDED.