Duke Energy Carolinas, LLC v. AG Ins. SA/NV, 2018 NCBC 38.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 5594

DUKE ENERGY CAROLINAS, LLC
and DUKE ENERGY PROGRESS,
LLC,

Plaintiffs,

v.

AG INSURANCE SA/NV (f/k/a
L'Etoile S.A. Belge d'Assurances); et
al.,

Defendants.

**ORDER AND OPINION ON DUKE'S
MOTION FOR PROTECTIVE ORDER
REGARDING DISCOVERY OF
CERTAIN CONFIDENTIAL
SETTLEMENT DOCUMENTS AND
PROTECTIVE ORDER**

1.     **THIS MATTER** is before the Court on Plaintiffs Duke Energy Carolinas, LLC and Duke Energy Progress, LLC's (together, "Duke") Motion for Protective Order Regarding Discovery of Certain Confidential Settlement Documents (the "Motion") in the above-captioned case.

2.     For the reasons stated herein, the Court **GRANTS** the Motion **in part** and **DENIES** the Motion **in part**.

*Hunton & Williams LLP, by Frank E. Emory, Jr., Ryan G. Rich, and Patrick M. McDermott, and Pillsbury Winthrop Shaw Pittman LLP, by Mark. J. Plumer, Matthew G. Jeweler, Aaron D. Coombs, Latosha M. Ellis, and William C. Miller, for Plaintiffs Duke Energy Carolinas, LLC and Duke Energy Progress, LLC.*

*Goldberg Segalla, by David L. Brown and David G. Harris, and Rivkin Radler LLP, by Alan S. Rutkin, George D. Kappus, Steven Zuckermann, and Robert Tugander, for Defendant Associated Electric & Gas Insurance Services Ltd.*

*McAngus Goudelock & Courie, by John T. Jeffries, John Barringer, and Jeffrey Kuykendal, and Karbal Cohen Economou Silk Dunne LLC, by Roderick Dunne and Jocelyn F. Cornbleet, for Defendants Allianz Global*

*Risks US Insurance Co., Alllianz Underwriters Insurance Co., Fireman's Fund Insurance Co., and Assurances Generales de France.*

*Fitzgerald Litigation, by Andrew L. Fitzgerald, and Cohn Baughman & Martin, by William M. Cohn, Frank Slepicka, and Christopher P. Hemphill, for Defendants Century Indemnity Co., Federal Insurance Co., and Pacific Employers Insurance Co.*

*Bradley Arant Boult Cummings LLP, by Corby Cochran Anderson and Matthew S. DeAntonio, and Freeborn & Peters LLP, by Bruce Engel, Patrick Frye, and Ryan Rudich, for Defendant Arrowood Indemnity Co.*

*McAngus Goudelock & Courie, by John T. Jeffries, John Barringer, and Jeffrey Kuykendal, and Budd Larner P.C., by Michael Balch and David I. Satine, for Defendant General Reinsurance Corp.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by D.J. O'Brien, III, and Karbal Cohen Economou Silk Dunne LLC, by Dena Economou and Gerald Ziebell, for Defendants First State Insurance Co. and Twin City Fire Insurance Co.*

Bledsoe, Judge.

## I.

## BACKGROUND

3. Duke initiated its request for a protective order on January 25, 2018 under Business Court Rule ("BCR") 10.9. Defendant Associated Electric & Gas Insurance Services Limited ("AEGIS") and Defendants Allianz Global Risks US Insurance Company, Allianz Underwriters Insurance Company, Fireman's Fund Insurance Company, and Assurances Generales De France (collectively, "AGF") submitted BCR 10.9 statements in opposition to Duke's request. Pursuant to BCR 10.9(b)(1), the Court thereafter ordered Duke to file the Motion and the parties to submit briefs on

the Motion. Duke, AEGIS, and AGF submitted briefs in connection with the Motion. Certain other defendants (the "Joining Defendants") joined AGF's brief.[1]

4. This action focuses on whether AEGIS, AGF, the Joining Defendants (collectively, the "Objecting Defendants"), and other insurers (together, "Defendants") are obligated to compensate Duke for insurance claims resulting from liabilities linked to coal combustion residuals ("CCRs")—commonly known as coal ash—at certain Duke-owned power plants in North and South Carolina. (Am. Compl. ¶ 2, ECF No. 232.)

5. Since 1996, Duke and AEGIS have engaged in multiple rounds of settlement negotiations concerning Duke's liabilities or potential liabilities for certain environmental matters under various AEGIS insurance policies.[2] (Duke's Mem. Law Supp. Mot. Protective Order Regarding Disc. Certain Confidential Settlement Docs. 2–3 [hereinafter "Duke's Br."], ECF No. 242.; AEGIS's Mem. Resp. Duke's Mot. Protective Order Regarding Disc. Certain Settlement Docs. 1 [hereinafter "AEGIS's Br."], ECF No. 247.) As a result of these previous settlement negotiations, Duke and AEGIS entered into several standstill and confidentiality agreements (the "Standstill

---

[1] The Joining Defendants were Defendants Century Indemnity Company, Federal Insurance Company, Pacific Employers Insurance Company, Arrowood Indemnity Company, General Reinsurance Corporation, First State Insurance Company, and Twin City Fire Insurance Company.

[2] According to Duke, the settlement negotiations with AEGIS focused on asbestos and manufactured gas plant liabilities faced by Duke Power Company, predecessor to Plaintiff Duke Energy Carolinas, LLC, and Carolina Power & Light Company, predecessor to Plaintiff Duke Energy Progress, LLC. Duke has represented that it "provided formal notice in 1996 of actual claims and requested coverage" as to these liabilities. (Duke's Br. 2.) For convenience, the Court will refer to Duke and its predecessors as "Duke."

Agreements") and settlement agreements. (Duke's Br. 2–3; *e.g.*, AEGIS's Br. Ex. A. ¶ 2.) The terms of these agreements required the parties to keep certain documents prepared for the settlement negotiations confidential. (Duke's Br. 2–3; AEGIS's Br. Ex. A ¶¶ 7–12.)

6. Certain discovery requests served by a number of defendants in this action seek the production of documents related to the previous settlement negotiations between Duke and AEGIS. (Duke's Br. Ex. J, at 5–12, ECF. No. 242.10.) In response, AEGIS, with Duke's consent, produced over 6,000 pages of responsive documents that include (i) notice letters from the 1996 time period identifying claims and circumstances that might give rise to claims—including circumstances relating to potential CCR liability—(ii) the Standstill Agreements, and (iii) the settlement agreements between Duke and AEGIS. (Duke's Br. 4.) Duke also represents that factual documents traded in connection with the settlement negotiations that were not created for the purposes of settlement have been produced. (Duke's Br. 4.)

7. AEGIS withheld approximately 168 documents from production because it concluded that these documents either fell within the confidentiality restrictions in the Standstill Agreements or should be withheld due to an applicable legal privilege. (AEGIS's Br. 4.) AEGIS redacted portions of 92 more documents based on privilege, relevance, or the Standstill Agreements. (AEGIS's Br. 4.)

8. Duke was permitted by AEGIS to review AEGIS's intended production prior to AEGIS turning over the documents to other parties in this litigation. (AEGIS's Br. 3.) As a result of that review, Duke requested that AEGIS redact or withhold specific

additional documents pursuant to the Standstill Agreements. (Duke's Br. 4.) AEGIS disagrees that these documents are covered by the Standstill Agreements but, in response to Duke's request, agreed to withhold an additional 39 documents and redact portions of a further 68 documents until the Court determines AEGIS's discovery obligations concerning these documents. (AEGIS's Br. 4.)

9. Duke now seeks a protective order limiting discovery of the 367 confidential documents currently withheld or redacted by AEGIS that relate to the previous settlement negotiations between AEGIS and Duke (the "Withheld Documents"). Duke also asks the Court to limit discovery of oral communications that took place during the previous settlement negotiations.

10. The Objecting Defendants oppose Duke's Motion and argue that the Withheld Documents and oral communications that took place during the settlement negotiations should be discoverable because the documents or communications may contain information about Duke's previous knowledge of liabilities connected to CCRs. That knowledge, the Objecting Defendants argue, may prove relevant to the Objecting Defendants' defenses, including, among others, that Duke did not bring its claims within the applicable statute of limitations and that Duke failed to properly mitigate its claimed damages after learning of potential liabilities arising from CCRs.

11. The Court held a hearing on Duke's Motion on March 19, 2018. During argument on the Motion, the Court and the parties discussed the possibility of *in camera* review of the Withheld Documents. No party objected to this proposal.

12.    After reviewing and considering the materials provided by the parties in connection with the Motion and the arguments advanced by counsel at the March 19, 2018 hearing, the Court ordered AEGIS to provide copies of the Withheld Documents to the Court for *in camera* inspection, subject to work-product or attorney-client privilege redactions that were not disputed by the parties.  AEGIS provided the Withheld Documents to the Court on April 5, 2018.

13.    The Court has reviewed the Withheld Documents *in camera*.

14.    The Motion is now ripe for resolution.

II.

LEGAL STANDARD

15.    The Supreme Court of North Carolina has recently reiterated that "[t]he primary purpose of the discovery rules is to facilitate the disclosure prior to trial of any unprivileged information that is relevant and material to the lawsuit so as to permit the narrowing and sharpening of the basic issues and facts that will require trial." *Friday Invs., LLC v. Bally Total Fitness of the Mid-Atl., Inc.*, 805 S.E.2d 664, 667 (N.C. 2017) (quoting *Bumgarner v. Reneau*, 332 N.C. 624, 628, 422 S.E.2d 686, 688–89 (1992)).  Rule 26 furthers this important process by allowing "[p]arties [to] obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." N.C. R. Civ. P. 26(b)(1).  Our courts have long recognized that "[t]he relevancy test for discovery is not the same as the relevancy test for admissibility into evidence.  To be relevant for purposes of discovery, the information [sought] need only be 'reasonably calculated' to lead to the discovery of

admissible evidence." *Shellhorn v. Brad Ragan, Inc.*, 38 N.C. App. 310, 314, 248 S.E.2d 103, 106 (1978); *see also* N.C. R. Civ. P. 26(b)(1); *Lowd v. Reynolds*, 205 N.C. App. 208, 214, 695 S.E.2d 479, 483 (2010). If this test is met, a party may not object to a discovery request merely because "the information sought will be inadmissible at the trial." N.C. R. Civ. P. 26(b)(1). The fact that "the examining party has knowledge of the information as to which discovery is sought" is likewise immaterial. *Id.*

16. A party's ability to obtain discovery may, however, be subject to certain restraints. "Upon motion by a party or by the person from whom discovery is sought, and for good cause shown," a trial court may issue an order limiting discovery "to protect a party or person from unreasonable annoyance, embarrassment, oppression, or undue burden or expense." N.C. R. Civ. P. 26(c). "One party's need for information must be balanced against the likelihood of an undue burden imposed upon the other." *Willis v. Duke Power Co.*, 291 N.C. 19, 34, 229 S.E.2d 191, 200 (1976). "If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery." N.C. R. Civ. P. 26(c); *Lovendahl v. Wicker*, 208 N.C. App. 193, 200, 702 S.E.2d 529, 534 (2010) ("A motion for a protective order under Rule 26(c) that is denied . . . may end in the same result as a motion to compel discovery . . . an order compelling discovery.").

17. The decision to enter a protective order regarding discovery and to protect specific documents from disclosure is "within the discretion of the trial court and will not be upset on appeal absent a showing of abuse of discretion." *Powers v. Parisher*,

104 N.C. App. 400, 409, 409 S.E.2d 725, 730 (1991). Duke's Motion presents the Court with such a decision.

## III.

## ANALYSIS

18. Duke argues that the Court should grant Duke's Motion and protect the Withheld Documents from disclosure because of public policy concerns and the importance of keeping settlement negotiations confidential and because the documents sought are not relevant under Rule 26. The Court examines each of Duke's arguments in turn.

19. Duke first asks the Court to enter the requested protective order because of public policy concerns favoring settlement. Duke argues that the reasons supporting a protective order under Rule 26(c) "should include limiting discovery into settlement-related communications where allowing such discovery would discourage settlement among the parties to an ongoing litigation." (Duke's Br. 4.) While asserting that its position does not require the Court to create a heretofore unrecognized "settlement privilege" in North Carolina, Duke urges the Court to require that a "heightened standard of relevance" be met before documents prepared for and communications made during settlement negotiations can be discovered. (Duke's Br. 6.) The Court should impose this heightened standard, Duke contends, to foster settlement negotiations and protect parties who have entered into a "highly structured settlement process [like] Duke and AEGIS[.]" (Duke's Br. 8.)

20. Citing case law from other jurisdictions, Duke warns that "[p]arties are unlikely to propose the types of compromises that most effectively lead to settlement unless they are confident that their proposed solutions" will not be used for some purpose in later litigation "by some future third party." (Duke's Br. 7 (quoting *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003).) Duke also points to North Carolina statutes that are premised on similar considerations to support its request. *See, e.g.*, N.C. Gen. Stat. § 7A-38.1(l); N.C. R. Evid. 408.

21. Although Duke denies it is encouraging the Court to adopt a full-fledged settlement privilege for application in this case, the reasoning Duke advances for its heightened standard is nearly identical to that used by courts that recognize such a privilege. *See Goodyear*, 332 F.3d at 980 ("Without a privilege, parties would more often forego negotiations for the relative formality of trial. Then, the entire negotiation process collapses upon itself, and the judicial efficiency it fosters is lost.").

22. The practice of affording special discovery protections to settlement negotiations merely because they are settlement negotiations has been widely criticized and rejected by the majority of federal courts that have considered the issue.[3] *See, e.g.*, *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 n.20 (7th Cir. 1979) ("Inquiry into the conduct of [settlement] negotiations

---

[3] The North Carolina appellate courts have recognized that "[w]ith the exception of the United States Supreme Court, federal appellate decisions are not binding upon either the appellate or trial courts of this State." *Shepard v. Ocwen Fed. Bank, FSB*, 172 N.C. App. 475, 479, 617 S.E.2d 61, 64 (2005). North Carolina state courts may, however, consider federal courts' analysis and holdings as persuasive authority. *Id.*

is . . . consistent with the letter and the spirit of Rule 408 of the Federal Rules of Evidence. That rule only governs admissibility."); *Graves v. United States*, No. 13-cv-22501-MOORE/MCALILEY, 2014 U.S. Dist. LEXIS 192715, at *5 (S.D. Fla. Oct. 30, 2014) ("Neither the Supreme Court nor this Circuit has recognized a settlement privilege as a matter of federal common law."); *Nat'l Union Fire Ins. Co. v. Porter Hayden Co.*, No. CCB-03-3408, 2012 U.S Dist. LEXIS 23716, at *12 (D. Md. Feb. 24, 2012) ("[T]he Fourth Circuit has not imposed a settlement privilege with respect to discovery. To the contrary, courts in this circuit have found that '*relevance* not *admissibility,* is the appropriate inquiry with regard to whether or not the information sought . . . is discoverable.'" (quoting *Herchenroeder v. Johns Hopkins Univ. Applied Physics Lab.*, 171 F.R.D. 179, 181 (D. Md. 1997))); *Two-Way Media LLC v. AT&T Inc.*, No. SA-09-CA-476-OG, 2011 U.S. Dist. LEXIS 160122, at *6 (W.D. Tex. Mar. 7, 2011) ("Federal district courts are split, but clearly, the majority of courts do not recognize an absolute privilege for settlement agreements and negotiations."); *In re Subpoena Issued to CFTC*, 370 F. Supp. 2d 201, 212 (D.D.C. 2005) (declining to recognize "a federal settlement privilege" after engaging in a detailed analysis of federal jurisprudence on the recognition of new privileges).

23. Likewise, the North Carolina appellate courts have not heretofore recognized a discovery privilege linked to settlement or compromise negotiations. *See Media Network, Inc. v. Mullen Advert., Inc.*, 2006 NCBC LEXIS 6, at *6 (N.C. Super. Ct. Apr. 21, 2006); *see also Federated Fin. Corp. of Am. v. Jenkins*, No. COA11-654, 2012 N.C. App. LEXIS 19, at *8–9 (N.C. Ct. App. Jan. 17, 2012) ("Defendant does not

cite any authority that states that confidential settlements are never discoverable, nor does he explain why any of these particular settlements are not discoverable. This argument is without merit." (citation omitted)).

24. Duke's proposed "heighted standard of relevance" basis for a protective order also lacks support under North Carolina law. Although "the public policy of this State encourages settlement agreements," *Bromhal v. Stott*, 341 N.C. 702, 705, 462 S.E.2d 219, 221 (1995), that general principle does not give the Court leave to use Rule 26(c) to invent a new standard for the discovery of settlement documents and communications. Duke's invocation of specific circumstances in which North Carolina law protects settlement negotiations only highlights our General Assembly's decision to forgo a blanket protection for communications or documents linked to settlement negotiations. The Court will not second-guess that decision. *Rhyne v. K-Mart Corp.*, 149 N.C. App. 672, 680, 562 S.E.2d 82, 89 (2002) ("The General Assembly is where public policy is better debated.")

25. For these reasons, the Court will not enter a protective order preventing production of the 367 documents solely because the information Defendants seek is related to settlement negotiations. Consequently, the Court turns to whether the Withheld Documents and oral communications during Duke and AEGIS's settlement negotiations are relevant to the subject matter of this litigation under Rule 26. The Court examines the Withheld Documents first.

26. Duke contends that the Withheld Documents are not relevant because they were compiled for the purpose of advancing the settlement positions of AEGIS and

Duke and thus have minimal probative value. Duke also argues against the Withheld Documents' relevance by pointing out that evidence of statements and conduct in compromise negotiations is inadmissible under North Carolina Rule of Evidence 408. Duke appears to conclude that any evidence discovered from information contained within the Withheld Documents will necessarily also be inadmissible under Rule of Evidence 408. The Court does not find these arguments persuasive.

27. First, the Court's inquiry here is focused on the Withheld Documents' relevance in the context of Rule 26, not their probative value or admissibility at a later trial. Second, Rule 26 applies the same test for relevance regardless of a document's origins—the information sought is relevant if it is "'reasonably calculated' to lead to the discovery of admissible evidence." *Shellhorn*, 38 N.C. App. at 314, 248 S.E.2d at 106. Thus, if the Withheld Documents contain information that meets this test—for example, information reasonably calculated to lead to the discovery of the underlying facts or data known to Duke that prompted Duke to assert its claims linked to CCR liabilities—that information is relevant.

28. Indeed, after reviewing the Withheld Documents *in camera*, the Court concludes that a significant portion contain relevant information. In particular, many of the Withheld Documents provided to the Court report expert findings concerning environmental risks at power plants that are the subject matter of this case, evaluate the potential costs of different solutions to these environmental risks, or discuss applicable regulations that control or controlled Duke's potential liability resulting from CCRs. Other documents contain notes and correspondence related to

purported claims by Duke that were linked to CCRs at the plants and facilities that are the subject matter of this dispute.

29. The Court concludes that this information is reasonably calculated to lead to the discovery of admissible evidence related to Duke's claims or the Objecting Defendants' defenses. Neither Duke nor AEGIS has argued that the production of this information will cause either of them "unreasonable annoyance, embarrassment, oppression, or undue burden or expense" under Rule 26, and thus the Court concludes that the Objecting Defendants' need for this information outweighs any undue burden or hardship imposed on Duke or AEGIS by production. The Court, in its discretion, will therefore deny Duke's Motion as to the Withheld Documents to the extent the documents contain facts—or legal positions exchanged between Duke and AEGIS based on stated facts—that concern CCRs and the power plants that are the subject matter of this case. *Willis*, 291 N.C. at 36, 229 S.E.2d at 201 ("In the interests of justice, the trial judge may require *in camera* inspection and may allow discovery of only parts of some documents."); *see Next Advisor Continued, Inc. v. LendingTree, Inc.*, 2016 NCBC LEXIS 72, at *12 (N.C. Super. Ct. Sept. 16, 2016) (denying defendant's motion for protective order after concluding that plaintiff's need for relevant information outweighed the burden on defendant's witness).

30. At the same time, the Withheld Documents also contain a great deal of irrelevant information. As Duke has represented to the Court, many of the pages provided by AEGIS deal with asbestos litigation or power plants that are not at issue in this case. Other documents contain AEGIS's or Duke's opinions concerning

settlement figures, specific settlement amounts offered or demanded, and proposals for settlement terms. This information is not linked to Duke's claims, the Objecting Defendants' defenses, or other disputed matters in this litigation and is therefore not reasonably calculated to lead to the discovery of admissible evidence under Rule 26. Accordingly, the Court concludes that good cause exists to grant Duke's Motion in part and exclude this irrelevant information from discovery. *See Powers*, 104 N.C. App. at 409, 409 S.E.2d at 730–31 ("We hold that it was an abuse of discretion not to have granted defendant some relief under Rule 26(c) . . . on the ground that plaintiff's requests for discovery . . . far exceed the scope of . . . documents relevant to plaintiff's action and are, therefore, unduly burdensome."); *Brown v. Secor*, 2017 NCBC LEXIS 65, at *38–39 (N.C. Super. Ct. July 28, 2017) (granting motion for protective order as to records that were highly likely to contain vast amounts of irrelevant, personal information); *Le Bleu Corp. v. B. Kelley Enters., Inc.*, 2014 NCBC LEXIS 62, at *9–10 (N.C. Super. Ct. Nov. 21, 2014) (entering a protective order to preclude certain topics from discovery in Rule 30(b)(6) depositions after concluding that the information sought was irrelevant to the success or failure of the parties' claims or defenses).

31. Having concluded that Duke's Motion should be granted in part and denied in part, the Court will order AEGIS to produce specific Withheld Documents, or portions of specific Withheld Documents with redactions, as identified herein.

32. Finally, as to Duke's request that the Court protect oral communications that took place during Duke and AEGIS's negotiations, and until the Court is faced with a dispute about specific oral communications, the Court concludes that a

protective order similar to that now entered regarding the Withheld Documents is appropriate. Subject to other limitations, such as the attorney-client privilege or the work-product doctrine, Defendants may ask questions about the facts and legal positions exchanged during negotiations between Duke and AEGIS concerning CCRs and Duke's coal-fired power plants involved in this case. Defendants are not entitled to discover oral communications concerning the amount of specific settlement demands or offers, opinions concerning settlement figures, or proposals for settlement terms.

IV.

CONCLUSION

33. **WHEREFORE**, the Court, in the exercise of its discretion, hereby **GRANTS** Duke's Motion **in part** and **DENIES** Duke's Motion **in part** and **ORDERS** as follows:

a. AEGIS shall produce for discovery those documents or pages identified below by Bates number, subject to the preexisting redactions[4] and, to the extent required, the further redactions specified herein.[5]

---

[4] In addition to attorney-client and work-product redactions, the Withheld Documents provided to the Court also included several pages that were redacted as "Non Responsive – Irrelevant." On April 19, 2018, the Court emailed AEGIS to request unredacted copies of these pages, and AEGIS promptly complied. All counsel were copied on the Court's April 19 email, which included the specific pages on which the "Irrelevant" redactions were made. The Court has reviewed the unredacted copies of these pages and concludes—with one exception noted herein—that they are indeed irrelevant and that the redactions marked as "Irrelevant" shall remain in place.

[5] The copies of the Withheld Documents provided to the Court contained a large number of duplicates. The Court has not attempted to "de-duplicate" the documents. The parties are therefore advised that the production ordered herein contains numerous duplicate documents.

i. 1;

ii. 2 (redacted to display only the text of section 1.0);

iii. 3 (reacted to display only section 1.1);

iv. 8–13 (redacted to display only section 1.3 and its subsections);

v. 15;

vi. 20 (redacted to display only section 1.4.3);

vii. 24 (redacted to display only the table's title, the table's top row with column labels, the "Coal-Fired Power Plant Sites" row, and the note at the bottom);

viii. 27;

ix. 440;

x. 465–70;

xi. 472–73 (redacted to exclude information after section 1.3.1);

xii. 477–78 (redacted to display only section 1.3.3);

xiii. 482 (redacted to display only the table's title, the table's top row with column labels, the "Coal-Fired Power Plant Sites" row, and the note at the bottom);

xiv. 485;

xv. 858–935;

xvi. 1629;

xvii. 1652–58;

xviii. 1662–63 (redacted to display only section 1.3.2);

xix. 1666 (redacted to display only the table's title, the table's top row with column labels, and the "Ash Pond Sites" row);

xx. 1669;

xxi. 2044–141;

xxii. 2237 (with the monetary amount of demands redacted);

xxiii. 2379 (redacted to display only the title of the page, the top row of the chart with column labels, the "Coal-Fired Power Plant Sites" row, the note at the bottom, and the name of the preparer in the bottom left corner);

xxiv. 2381;

xxv. 2425–71 (redacted to display only the following: the heading of the document—including the "To," "From," "Date," and "Re:" lines—on 2425; the information leading up to and including subheading "1. Asbestos-Related Bodily Injury Claims:" on 2425; subheading "2. Property Damage Claims" and the paragraphs between subheading two and heading "B" with the total cost figures mentioned in these paragraphs redacted; subheading "2. Property Damage Claims" on 2432; heading "D. Settlement Negotiations Between Duke and AEGIS Relating to Property Damage" on 2435; heading "E. AEGIS and Duke Agreed to Retain Neutral Consultant" on 2436; all of 2437; and the title "List of

Duke Sites" and the information relating to coal-fired power plants on 2439);

xxvi. 2472–73;

xxvii. 2474–517 (with all specific amounts of settlement demands redacted);

xxviii. 2518–19 (with the information preceding the paragraph beginning with "CP&L required" redacted on 2518 and the specific amount demanded on 2519 redacted);

xxix. 2520;

xxx. 2521–72 (with pages 2564–72 completely redacted);

xxxi. 2573–714 (with the specific amounts of all settlement demands redacted);

xxxii. 2719–70 (with 2762–70 completely redacted);

xxxiii. 2771–915 (with the specific amounts of all settlement demands redacted);

xxxiv. 2975–80 (with the specific amounts of settlement demands and offers redacted);

xxxv. 2986–88;

xxxvi. 2991–94 (with the "Non Responsive – Irrelevant" redaction on 2991 altered so that the majority of the third paragraph on 2991 is shown, except that the sentences between "the discount rate and the inflation rate" and "A comparison of cost estimates for six

ash pond sites" shall remain redacted; and 2992 redacted to display only the paragraph ending with "no monitoring is being conducted at the site");

xxxvii. 2997;

xxxviii. 3000–01 (with the amounts listed for "MGP Sites" and "Miscellaneous" redacted from the bottom of 3000 and 3001 redacted to display only the paragraph ending with "sites involved in the settlement discussions");

xxxix. 3013–14;

xl. 3035–37;

xli. 3097–262;

xlii. 3263–70;

xliii. 3271–72;

xliv. 3329;

xlv. 3384–88 (with the paragraph between the paragraph ending with "plans for the ash ponds" and the line "Good luck" redacted on 3384);

xlvi. 3389–448;

xlvii. 3449–519;

xlviii. 3520–89 (with the specific amounts of all settlement demands redacted);

xlix. 3642–705;

l. 3706–10 (with the paragraph between the paragraph ending with "plans for the ash ponds" and the line "Good luck" redacted on 3706);

li. 3716–67 (with 3759–67 completely redacted);

lii. 3911–12;

liii. 3914–30; and

liv. 3933–34.

b. With respect to all of the Withheld Documents, and to the extent not otherwise specifically noted herein, the monetary amounts of all demands and offers for settlement shall be redacted.

c. AEGIS may, or Duke may require AEGIS to, produce the above-described materials pursuant to the terms of the Stipulated Protective Order entered in this case.

d. Except as otherwise provided by this Order, Defendants shall not be entitled to discovery regarding the Withheld Documents.

e. Defendants shall be entitled to discovery regarding oral communications that took place during the prior Duke-AEGIS settlement negotiations to the extent those communications (i) concern facts known to Duke's or AEGIS's agents that related to Duke's liability or potential liability resulting from CCRs at the power plants that are the subject matter of this case or (ii) concern the legal positions advanced by Duke or AEGIS for the consideration of the opposing party based on such facts.

f. Defendants shall not be entitled to discovery regarding oral communications that took place during the prior Duke-AEGIS settlement negotiations to the extent those communications: (i) concern power plants not involved in this case or liabilities unrelated to CCRs; (ii) concern proposed terms of settlement, specific monetary amounts demanded as a part of settlement, specific monetary amounts offered as part of an offer for settlement, opinions on settlement figures; or (iii) are protected from discovery by application of the attorney-client privilege, the work-product doctrine, or other applicable privilege.

g. AEGIS shall produce the documents ordered to be produced herein no later than May 9, 2018.

h. The Court reserves the right to amend or rescind the protections of this Order for good cause shown.[6]

**SO ORDERED**, this the 30th day of April, 2018.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases

---

[6] The Court reviewed 367 documents, or almost 4,000 pages, in connection with Duke's Motion. The Court does not intended to routinely conduct such reviews, and to the extent further discovery disputes involve such voluminous records, the Court advises the parties to consider Rule 53's reference process.