IN THE SUPREME COURT OF NORTH CAROLINA

No. 64A22

Filed 16 June 2023

KELLY C. HOWARD AND FIFTH THIRD BANK, as co-trustees of the Ronald E. Howard Revocable Trust dated February 9, 2016, as amended and restated

v.

IOMAXIS, LLC, BRAD C. BOOR a/k/a BRAD C. BUHR, JOHN SPADE, JR., WILLIAM P. GRIFFIN, III, and NICHOLAS HURYSH, JR.

Appeal pursuant to N.C.G.S. § 7A-27(a)(3) from an order on defendant IOMAXIS, LLC's motion for protective order entered on 22 November 2021 by Judge Michael L. Robinson, Special Superior Court Judge for Complex Business Cases, in Superior Court, Mecklenburg County, after the case was designated a mandatory complex business case by the Chief Justice pursuant to N.C.G.S. § 7A-45.4(b). Heard in the Supreme Court on 1 February 2023.

> *Johnston, Allison & Hord, P.A., by Patrick E. Kelly, Greg Ahlum, and David T. Lewis, for plaintiffs-appellees.*

> *Allen, Chesson & Grimes PLLC, by Benjamin S. Chesson, David N. Allen, and Anna C. Majestro; and Nelson Mullins Riley & Scarborough LLP, by Travis A. Bustamante, for defendant-appellant IOMAXIS, LLC.*

> *Miller Monroe & Plyler, PLLC, by Jason A. Miller, Paul T. Flick, John W. Holton, and Robert B. Rader III; and Robert F. Orr, for defendant-appellee Nicholas Hurysh, Jr.*

DIETZ, Justice.

In July 2020, the defendants in this business court litigation all were jointly represented by the same law firm. Those defendants are a corporate entity—

IOMAXIS, LLC—and the individual corporate members of IOMAXIS.

During a joint conference call with counsel, one of the defendants, Nicholas Hurysh, secretly recorded the conversation. After a falling out among the co-defendants, Hurysh sought to waive the attorney–client privilege and disclose the contents of the call.

IOMAXIS moved for a protective order, arguing that the call was to discuss corporate matters. IOMAXIS further argued that counsel on the call (who also was IOMAXIS's counsel for general corporate matters) was providing advice to the individual defendants solely in their roles as agents of the company.

The trial court rejected this argument and ruled that Hurysh held the privilege individually and could waive it. As explained below, we affirm. The trial court made a fact finding that counsel was not acting as corporate counsel but instead as joint defense counsel for all the defendants, including Hurysh, under a written joint defense agreement. That finding is supported by at least some competent evidence in the record and thus is binding on appeal.

Based on that finding, the trial court properly determined that Hurysh jointly held the attorney–client privilege with respect to the secretly recorded call and "therefore may opt to waive the privilege if he so desires."

**Facts and Procedural History**

This case concerns a corporate entity known as IOMAXIS, LLC. In 2017, the founder and majority owner of IOMAXIS passed away. A dispute later arose between

the trust formed by his estate, whose trustees are the plaintiffs in this action, and the remaining members of IOMAXIS, who are defendants in this action.

During this time period, the law firm Holland & Knight, LLP represented IOMAXIS in connection with "general corporate matters" under a standard corporate engagement letter. This engagement letter was solely between Holland & Knight and IOMAXIS and did not involve representation of the individual members of IOMAXIS.

The CEO of IOMAXIS, Bob Burleson, signed this engagement letter on behalf of the company. Adam August, the Holland & Knight attorney who signed the engagement letter, was the primary attorney handling the corporate legal matters described in the engagement letter on behalf of Holland & Knight.

In June 2018, plaintiffs brought this action against IOMAXIS and the remaining members of the company. Plaintiffs' suit sought to resolve "whether IOMAXIS is a North Carolina or Texas limited liability company; whether there is a valid operating agreement; whether the Trust is entitled to distributions from IOMAXIS on the basis of Decedent Howard's interest therein; and whether the buy-sell provisions under the North Carolina operating agreement controlled at the time of Decedent Howard's death."

In July 2018, Holland & Knight executed a second engagement letter, this one covering the "dispute" with plaintiffs and the lawsuit "in state court in North Carolina." This second engagement letter stated that Holland & Knight would jointly represent IOMAXIS and its individual corporate members, all of whom were named

defendants in this litigation. The letter emphasized that "there will be no way in this joint representation for you to pursue your individual interests through your common attorney." A different Holland & Knight attorney, Phillip Evans, signed this second engagement letter.

There is nothing in the second engagement letter, or anywhere else in the record, indicating that Holland & Knight created any separation within the firm between attorneys handling the corporate matters and attorneys handling the litigation matters.

The second engagement letter also addressed potential implications of the joint representation. The letter stated that "as a necessary consequence of this joint representation, all information you share with [Holland & Knight] in this joint representation will be shared among each other." It continued, "[I]n the unlikely event of a disagreement among you, the attorney–client privilege will not protect the information you share with us."

On 22 July 2020, Adam August of Holland & Knight participated in a Zoom call with IOMAXIS CEO Bob Burleson and IOMAXIS members Brad Buhr, Trey Griffin, Nicholas Hurysh, and John Spade.

Several months after this call, the relationship among the remaining members of IOMAXIS deteriorated. Hurysh retained new counsel, sought to bring crossclaims against the other members of IOMAXIS, and ultimately revealed that he had recorded the July 22 conference call. Hurysh asserted that he held the attorney–client

privilege with respect to the call and intended to waive it so that he could use the contents of the call in this litigation.

In response, IOMAXIS asserted that it held the exclusive attorney–client privilege over the July 22 call and that Hurysh had no authority to waive that privilege. The presiding business court judge referred this issue to another business court judge for resolution. After a hearing, the trial court entered an order finding that August's legal advice on the July 22 call was made under the second engagement letter, in which Holland & Knight jointly represented Hurysh, the other corporate members, and IOMAXIS. As a result, the court determined that Hurysh held the attorney–client privilege and could choose to waive it despite objection from IOMAXIS.

IOMAXIS timely appealed this interlocutory order. We have appellate jurisdiction over this matter because a trial court order compelling the disclosure of purportedly privileged communications affects a substantial right and is immediately appealable. *See In re Miller*, 357 N.C. 316, 343 (2003).

## Analysis

The crux of this case is whether the trial court properly determined that Hurysh jointly held the attorney–client privilege over the July 22 call and whether the court used the proper legal test to make that determination.

For the attorney–client privilege to apply, "the relation of attorney and client must have existed at the time the particular communication was made." *Friday Invs.,*

*LLC v. Bally Total Fitness of the Mid-Atl., Inc.*, 370 N.C. 235, 238 (2017) (cleaned up).

Typically, an attorney–client relationship arises "between an attorney and a single client the attorney represents." *Id.* But this Court also has recognized "a multiparty attorney–client relationship in which an attorney represents two or more clients." *Id.* The rationale for this multiparty attorney–client relationship "is that individuals with a common interest in the litigation should be able to freely communicate with their attorney, and with each other, to more effectively defend or prosecute their claims." *Id.*

Once a court determines that an attorney–client relationship exists, the court applies a five-factor test to assess whether a particular communication is protected by the privilege. *Id.* at 240. That test examines whether:

> (1) the relation of attorney and client existed at the time the communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a proper purpose although litigation need not be contemplated and (5) the client has not waived the privilege.

*Id.*

"The trial court is best suited to determine, through a fact-sensitive inquiry, whether the attorney–client privilege applies to a specific communication." *Id.* (emphasis omitted). When conducting this fact-sensitive inquiry, the trial court is not *required* to make specific fact findings. *Id.* When the trial court does not make written fact findings, "it is presumed that the court on proper evidence found facts to support

its judgment." *Id.* at 241. But when, as here, the trial court finds facts in its written order, a different standard of review applies, known as the "competent evidence" standard. Under this test, a trial court's findings of fact "will be upheld if supported by *any* competent evidence" in the record. *N.C. Farm Bureau Mut. Ins. Co. v. Stox*, 330 N.C. 697, 702 (1992) (emphasis added). "This is true even when evidence to the contrary is present." *Id.* Our role under the competent evidence standard is solely to assess if any competent evidence supports the trial court's finding; if so, that finding is "conclusive on appeal." *Hutchins v. Honeycutt*, 286 N.C. 314, 319 (1974). Once we determine which fact findings are supported by competent evidence, we then review whether the trial court's ruling, based on those findings, amounted to an abuse of the court's discretion. *Friday Invs.*, 370 N.C. at 241.

No party in this appeal disputes these principles of the attorney–client privilege. But IOMAXIS seeks review of what it describes as an "exceedingly narrow issue" that this Court has not yet addressed: Does our traditional five-factor test for attorney–client privilege apply to more complex attorney–client relationships in the corporate setting?

IOMAXIS argues that the trial court should not have used our state's traditional test and instead should have adopted a more sophisticated test that other courts apply when a corporate officer asserts a personal claim of attorney–client privilege over communications with the corporation's counsel. *See In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 123 (3d Cir. 1986). This test, which

originated in the Third Circuit, is used by many other federal and state courts.

The *Bevill* test, as it is known, exists because a corporation "cannot speak directly to its lawyers." *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010). Instead, the corporation's attorney–client relationship is formed through communications between the attorney and the individual officers, directors, and employees of the company. *Id.* These same officers, directors, and employees occasionally seek personal legal advice from corporate counsel. When this occurs, courts have developed a test to determine whether a separate attorney–client relationship arose between the attorney and the individual officer, director, or employee. *Bevill*, 805 F.2d at 123. The *Bevill* test puts the burden on the individual to show that there was a separate attorney–client privilege beyond the existing relationship between the attorney and the corporation. *Id.*

Under the *Bevill* test, corporate officers asserting personal privilege claims must show (1) that they approached the corporate counsel for the purpose of seeking legal advice, (2) that when they approached counsel they made it clear that they were seeking legal advice in their individual rather than in their representative capacities, (3) that counsel saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise, (4) that their conversations with counsel were confidential, and (5) that the substance of their conversations with counsel did not concern matters within the company or the general affairs of the company. *Id.*

We see the benefit of endorsing the *Bevill* test for use when our courts must

determine whether a corporate official can assert an individual attorney–client privilege over communications with corporate counsel. The *Bevill* test has been widely adopted by other state and federal courts. *See*, *e.g.*, *Graf*, 610 F.3d at 1157; *Ex parte Smith*, 942 So. 2d 356, 360 (Ala. 2006); *In re Grand Jury Subpoena*, 274 F.3d 563, 571–72 (1st Cir. 2001); *In re Grand Jury Subpoenas*, 144 F.3d 653, 659 (10th Cir. 1998); *Zielinski v. Clorox Co.*, 504 S.E.2d 683, 686 (Ga. 1998); *United States v. Int'l Brotherhood of Teamsters, Chauffers, Warehousemen & Helpers of Am., AFL-CIO*, 119 F.3d 210, 214–15 (2d Cir. 1997). In these other jurisdictions, the test has proved useful to guide expectations about the attorney–client privilege in the corporate context. This is important because, "if the purpose of the attorney–client privilege is to be served, the attorney and client must be able to predict with some degree of certainty whether particular discussions will be protected." *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981). By endorsing this test, we can provide clarity for corporate counsel concerning the appropriate steps to either create, or avoid creating, a separate attorney–client privilege when communicating with corporate officers or employees.

Having said that, every attorney–client privilege question is a "fact-intensive inquiry" that must be resolved on a case-by-case basis. *Friday Invs.*, 370 N.C. at 240. Here, the facts found by the trial court mean there was no need to apply the *Bevill* test, because the advice Holland & Knight provided was not given as corporate counsel but instead as joint defense counsel for the company and its individual

members who were named parties in this litigation.

Specifically, the trial court found that Hurysh was represented by Holland & Knight in this litigation under the terms of an express engagement letter. That engagement letter stated that Holland & Knight jointly represented Hurysh, his fellow corporate members, and IOMAXIS and that "there will be no way in this joint representation for you to pursue your individual interests through your common attorney." The engagement letter further stated that "in the unlikely event of a disagreement among you, the attorney–client privilege will not protect the information you share with us."

After reviewing the entire July 22 call transcript in context, the trial court found that "the purpose of the July 22 Call was for August, an H&K attorney, to give the four members of IOMAXIS information for them to determine whether it was in their individual best interests to sign the proposed amended operating agreement, drafted by H&K attorneys for possible execution, particularly in light of the pending litigation." Based on this finding, the court further found that, during the July 22 call, the communications from August were "in his capacity as an attorney" with "a firm that Hurysh had hired to defend him in this litigation, providing legal advice about the potential impact of Hurysh's possible actions (signing an amendment to IOMAXIS' operating agreement) on his defense in this litigation."

Finally, the trial court acknowledged that August "very messily" stated at one point during the July 22 call that "our client is the company" and that the amended

operating agreement "is in the best interest of the company." But the trial court found that this "disclaimer" did not change the fact that August went on to "give Hurysh advice that was in his best interest in defending himself in the lawsuit" and that August gave that personal legal advice to Hurysh "without limitation or qualification." Thus, the trial court found that August's communications on the July 22 call were subject to the litigation engagement letter creating a joint defense relationship among Hurysh, his fellow IOMAXIS members, and the company itself.

All of these fact findings are supported by at least some competent evidence in the record. We acknowledge that IOMAXIS points to other, competing evidence in the record which suggests that August was acting in his role as corporate counsel for IOMAXIS. The trial court rejected this competing evidence. Under the competent evidence standard, we must accept the trial court's findings despite this competing evidence. *Adams v. AVX Corp.*, 349 N.C. 676, 681 (1998).

Based on the court's findings, there was no need to apply the *Bevill* test—a test designed to assess a corporate officer's communications with corporate counsel. The trial court found that Holland & Knight was not acting as corporate counsel but instead as joint defense counsel for a number of clients including Hurysh. Based on that finding, the trial court properly determined that Hurysh jointly held the attorney–client privilege with respect to the July 22 call and that Hurysh "therefore may opt to waive the privilege if he so desires."

We emphasize that our holding today is fact specific and does not diminish the

ability of corporate counsel to preserve the corporation's attorney–client privilege when communicating with corporate directors, officers, and employees. There are many steps that corporations and their counsel can take to avoid factual disputes over the scope of counsel's legal advice.

Most obviously, counsel can choose not to jointly represent both the corporation and the individual directors, officers, or employees as counsel did in this case through the litigation engagement letter. But even when counsel chooses to do so, there are ways to avoid the factual confusion that arose here. For example, an engagement letter can identify the particular attorneys within the firm who are handling a joint litigation defense and separately identify the corporate attorneys who are handling the general legal affairs of the company. The letter can then inform the jointly represented parties that any legal advice from the corporate attorneys is solely for the company, not the individuals.

Similarly, a corporate attorney speaking to officers or employees of the company can offer a clear disclaimer of representation, emphasizing that counsel represents the corporation for purposes of the discussion; that the communications are covered by an attorney–client privilege held solely by the company; and that the participants must consult their own counsel if they seek personal legal advice about the subject matter.

None of this took place here, thus creating a factual dispute about the scope of Holland & Knight's representation on the July 22 call. The trial court resolved that

factual dispute by making findings in favor of Hurysh. Those findings are supported by competent evidence, and the trial court's resulting determination that Hurysh held the attorney–client privilege was well within the trial court's sound discretion. We therefore affirm the trial court's order.

AFFIRMED.